463 F.2d 316
 79 L.R.R.M. (BNA) 2984, 149 U.S.App.D.C. 370,
67 Lab.Cas. P 12,547
 RETAIL CLERKS UNION, LOCAL 1401, RETAIL CLERKS INTERNATIONAL
ASSOCIATION, AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Zinke's Foods,
Inc., Intervenor.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
ZINKE'S FOODS, INC., Respondent.
 No. 24704, No. 71-1082.
 United States Court of Appeals,
 District of Columbia Circuit.
 Argued Oct. 22, 1971.
Decided March 30, 1972.
 
 Mr. Carl L. Taylor, Washington, D. C., with whom Mr. Robert G. Sewell, Washington, D. C., was on the brief, for petitioner in No. 24704.
 Mr. Warren M. Davison, Deputy Gen. Counsel, N. L. R. B., with whom Messrs. Arnold Ordman, Gen. Counsel at the time the brief was filed, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Stanley R. Zirkin, Atty., N. L. R. B., were on the brief, for petitioner in No. 71-1082 and respondent in No. 24704.
 Mr. Russ R. Mueller, Milwaukee, Wis., for intervenor in No. 24704 and respondent in No. 71-1082.
 Before BAZELON, Chief Judge, and LEVENTHAL and ROBINSON, Circuit Judges.
 LEVENTHAL, Circuit Judge:
 
 
 1
 In these proceedings, the National Labor Relations Board defends and seeks enforcement of its decision and order[1] requiring Zinke's Foods, Inc. (Company) to cease and desist from certain unfair labor practices and from interfering "in any other manner" with its employees' rights under Sec. 7 of the National Labor Relations Act;[2] to recognize and bargain collectively with the Retail Clerks Union, Local 1401 (Union) upon request; to make employee Edward Kallas whole for loss of earnings caused by his "constructive discharge;" and to post notices to its employees of the contents of the Board's order.
 
 
 2
 In No. 24704, the Union challenges the Board's failure to consider the availability of a "compensatory" remedy.[3] We deny its petition. In No. 71-1082, the Board's petition for enforcement, the Company challenges the Board's refusal-to-bargain findings and bargaining order, claiming its alleged refusal to bargain was justified by the Union's loss of its representation election at Zinke's store, and subsequent failure to file timely objections to the election. The Board held that the Company had itself failed to make a timely presentation of its procedural claim that the Board should not have held a hearing on the Union's objections. The opinion of this court is principally addressed to this procedural question. It requires consideration of the detailed procedural background, as well as the applicable law. On reflection, we approve this procedural ruling of the Board, and therefore enforce its order against the Company based on the evidence adduced.
 
 I. BACKGROUND FACTS AND PROCEDURE
 
 3
 On February 14, 1966, the Union by letter sought recognition and bargaining as representative of the bulk of employees in Zinke's Beloit, Wisconsin food store.[4] The Union offered to prove that on that date the Union held valid bargaining authorization cards executed by 17 employees in an appropriate unit of 26. The Company's counsel notified the Union that the Company would not recognize the Union as bargaining agent. On February 21, the Union filed a petition for a representation election with the Board's Regional Director for the Thirtieth Region. On March 4, the Regional Director approved a Stipulation for Certification Upon Consent Election executed between the parties calling for an election at the Beloit store on March 16, 1966.
 
 
 4
 The Trial Examiner found as a fact that, following the March 4 Stipulation, Zinke's "embarked on an anti-union campaign which continued until about March 15." The Examiner found Sec. 8(a) (1) violations, including a refusal to permit on-premises employee discussion of the Union, even during non-work periods in non-public areas of the store, and threats of retaliation if the Union won the election, and found a Sec. 8(a) (3) violation in the "constructive discharge" of employee Edward Kallas, the Union's "leading employee organizer." The Company concedes that it is bound under Sec. 10(e) of the Act by the Examiner's findings in this regard since it did not except to them at the administrative level.
 
 
 5
 As to the Sec. 8(a) (5) violation, the first critical fact is that the Union was defeated in the March 16 election--ten votes for, fifteen against. As the Board notes in its brief: "A union that loses an election may nevertheless seek a bargaining order under Section 8(a) (5) of the Act where the employer has engaged in conduct warranting the setting aside of the election. But the Board will not issue a bargaining order in such a case 'unless the election be set aside upon meritorious objections filed in the representation case."'[5]
 
 
 6
 On March 21, the Union's attorney set the "election" case in motion by sending the following telegaphic notice of objection:
 
 
 7
 GENTLEMEN:/PLEASE BE ADVISED THAT THE UNION OBJECTS TO THE ELECTION CONDUCTED IN THE ABOVE MANNER ON WEDNESDAY MARCH 15. DURING THE COURSE OF THE ELECTION CAMPAIGN THE COMPANY ENGAGED IN A COURSE OF CONDUCT WHICH BOTH COERCED THE EMPLOYEES IN THE EXERCISE OF THEIR FREE CHOICE IN VIOLATION OF SECTION 8A1 AND ADDITIONALLY THIS CONDUCT UPSET THE "LABORATORY CONDITIONS" SURROUNDING THE ELECTION. A DETAILED STATEMENT OF POSITION WILL FOLLOW/
 
 
 8
 The same day, the Regional Director wrote to the Union requesting "evidence in support of your objections" within 7 days. On March 28, the Regional Director received a letter from the Union, dated March 24, detailing six specific objections to the election, based on the Company's pre-election conduct. On April 1, the Union filed an unfair labor practice charge, alleging the same preelection conduct as a violation of Sec. 8(a) (1), adding a charge that the Company's continuing refusal to accede to the February 16 demand for recognition constituted an unlawful refusal to bargain in good faith, violative of Sec. 8(a) (5).
 
 
 9
 On April 11, the Company filed a Motion to Overrule Petitioner's Objections to Conduct Affecting the Results of Election, which contended that the Union's March 21 telegram was not sufficiently specific under the Board's own rules, 29 CFR Sec. 102.69(a); and that the March 24 letter, received after expiration of the five-day period for filing election objections, came too late. On April 13, the Union amended its April 1 unfair labor practice charge to include the constructive discharge of employee Kallas.
 
 
 10
 On May 16, the Regional Director issued his Complaint and Notice of Hearing in the unfair labor practices case, docketed as No. 30-CA-372, charging violations of Secs. 8(a) (1), (3) and (5), and scheduling a hearing before a Trial Examiner in Beloit for July 6, 1966. On May 18 he issued, in the representation case No. 30-RC-400, his Report and Recommendations on Objections to Conduct Affecting the Results of the Election. Therein he ruled adversely to the Company's claim that the Union had not filed adequate objections timely:
 
 
 11
 In view of the filing of the telegram on March 21, 1966, followed by the detailed statement of position of the objections filed on March 28, 1966, both of which were served on the Employer, I find that the objections were timely filed, and contained the necessary form and substance to comply with Section 102.69 of the Board's Rules and Regulations. Furthermore, the investigation of the objections was not initiated until well after the service of the detailed statement of March 28th. In view of this and also of the fact that a hearing to resolve the objections is being recommended herein, it does not appear that the Employer was prejudiced by the manner of the filing of the objections. The Employer's motion to dismiss is accordingly denied.
 
 
 12
 The Regional Director recommended that a hearing be ordered in the representation case, since the investigation disclosed "substantial issues of credibility." Moreover, since the allegations of objectionable conduct were substantially the same as the allegation of unfair labor practices in Case No. 30-CA-372, already scheduled to be heard before a Trial Examiner, he recommended "for the purpose of avoiding undue costs and delay" that the representation case, No. 30-RC-400, be consolidated with No. 30-CA-372.
 
 
 13
 On June 2 the Board issued an Order Directing Hearing, stating: "No exceptions to the Regional Director's report having been filed by either party within the time provided therefor, the Board hereby adopts the Regional Director's recommendations as contained in his report." The Board ordered that a hearing be held in the representation case to resolve the issues raised by the objections of the Union petitioner. It further provided (a) the hearing may be consolidated with any hearing held in 30-CA-372 before a Trial Examiner designated by the Chief Trial Examiner, and (b) in the event the unfair labor practice proceeding is disposed of prior to such hearing, the Regional Director may designate a Hearing Officer to hear the representation matter. On June 6, the Regional Director issued an Order Consolidating Cases and Notice of Hearing.
 
 
 14
 The provisions of the Board order relating to violations of Secs. 8(a) (1) and (3) are not challenged here. Our order will provide for their enforcement.[6]
 
 
 15
 On the refusal to bargain charge, Trial Examiner Josephine Klein made findings as follows: The Company could have had no good faith doubt as to the Union's majority status on February 16, because of the Union's undisputed possession of bargaining authorization cards from a majority of the Company's Beloit store employees. Had the Company refused to bargain solely because of a genuine doubt as to the Union's majority, it would have permitted its employees to express their desires freely. Instead it began a continuing anti-union campaign shortly after the Union demand; intensified it, committing unfair labor practices; and maintained it until a few days before the election held March 16. The Company "produced no witnesses to rebut the inference of bad faith arising from the undisputed facts." The Company insisted on an election, after the demand for recognition, in order "to gain time to undermine the Union or dissipate its majority." The Examiner found that the Company committed a further violation of Sec. 8(a) (5) when it granted unilateral wage increases to 15 employees on June 4, without advising or consulting the Union.
 
 
 16
 The Company's contention based on the Union's loss of the election and failure to make a timely filing of appropriate objections,[7] was treated by the Trial Examiner as follows:
 
 
 17
 The Trial Examiner is of the opinion that such issue is not within her jurisdiction to decide. This issue was previously presented to the Regional Director, who ruled against Respondent and recommended that a hearing be held on the objections. The Regional Director's ruling, adopted by order of the Board (supra), is equivalent to "law of the case" and thus is binding on the Trial Examiner. The Board order specifically directed "a hearing . . . for the purpose of adducing evidence to resolve the issues raised by the Petitioner's objections." The Trial Examiner, therefore, is not at liberty to pass on the issue raised by Respondent but is limited to consideration of the objections on the merits.[20]
 
 
 18
 The Examiner recommended: a cease and desist order; back pay for employee Kallas;[8] a bargaining order; and for the 8(a) (5) violations, she recommended, as a compensatory remedy, that affirmative action, including a "makewhole" order directing the Company to make its employees whole for losses suffered due to its unlawful refusal to bargain. The Trial Examiner further recommended that the Union's objections to the conduct of the election, in the representation proceeding, be sustained, that the election be set aside, and the proceedings in connection therewith be vacated.
 
 
 19
 The Board reviewed and affirmed the rulings of the Trial Examiner at the hearing, finding that no prejudicial error was committed. It adopted the findings, conclusions and recommendations in the Trial Examiner's decision, except that it decided not to order the compensatory "make-whole" remedy adopted by the Examiner.
 
 II. THE BOARD'S BARGAINING ORDER
 
 20
 The Company resists the Board's bargaining order based on union cards on the ground that the election results, which were against the Union, are decisive, and that the Board's determination in the representation proceeding that the employer conduct warranted setting aside the election cannot stand because the holding of a hearing on objections to an election is dependent on a timely and adequate filing of objections.
 
 
 21
 We think the Company's claim must fall for the reason stated by the Trial Examiner, and adopted by the Board. We have presented the procedural situation in considerable, probably excessive, detail. Now we need only identify the highlights. The Company presented the same objection to the Regional Director. The Regional Director (a) ruled against the Company on the issue of the adequacy and timeliness of the Union's objections, and (b) recommended to the Board that a hearing be held on the issues of fact raised by the Union's objection. If the Company wished to present to the Board the procedural claim it now stresses, it should have filed an exception to the Regional Director's determination that its claim was unsound, and to the ensuing recommendation that a hearing be held. The Board adopted the report and recommendation of the Regional Director upon the express ground that no exceptions thereto had been filed. It was entitled to assume that the Company did not intend to press before the Board this technical, procedural claim. Having failed to bring the procedural matter forward timely, when the Board was considering whether to order a hearing, the Company cannot say at the end of the hearing, in the face of its failure to persuade the Board of the justice of its position on the merits, that the entire hearing was a nullity because of a threshold procedural mistake in ordering a hearing.
 
 
 22
 The rightness of this result will seem almost self-evident to any one versed in the elementals of doctrines of judicial administration. The underlying concept is as simple as this: Justice requires that a party have a fair chance to present his position. But overall interests of administration do not require or generally contemplate that he will be given more than one fair opportunity. The ramifications of this concept appear in various doctrines like law of the case, and estoppel by judgment. These doctrines and concepts have a rightful and reasonable application to the workings of administrative agencies. They are not to be applied mechanically so as to transplant what is right for the judicial system into a binding requirement that will not thrive in the different conditions of agency operations. Compare FCC v. Pottsville Broadcasting Co., 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656 (1940). But where, as here, the underlying principles of administration are reasonable for administrative conditions, they are not to be resisted on the ground that the agency's procedures do not spell out with absolute precision doctrines that are so elemental, at least to the legal community, and so reasonable.
 
 
 23
 In saying that the Company should have put its objection to the Board when it was considering the Director's recommendations, we are not to be taken as suggesting that all issues must be litigated to the top as soon as possible, with requests for appeals from interlocutory rulings. That is a separate matter that must be approached in the particular administrative context.
 
 
 24
 The subject of union elections conducted by the NLRB is characterized by a system that has been structured so as to expedite the conduct of elections in representation cases. Although the Board makes important decisions prior to the election--in defining the unit; and eligible employees--it was established early on that these were not subject to judicial review unless and until an unfair labor practice order issued. This deferral of judicial review may be burdensome in a particular case, when a company must postpone its review of an unjust ruling. The merit of the deferral is plain enough when one considers the number of cases that become academic in the light of the election. And there is obvious need for expedition in the holding of the election.
 
 
 25
 The Board was permitted in 1959 to delegate to its Regional Directors the authority to direct elections, and to determine the unit appropriate for collective bargaining. While the Board's rules provide for the filing of exceptions to the Regional Director's unit determinations, review by the Board at that stage is discretionary and will be granted only "where compelling reasons exist therefor," 29 CFR Sec. 102.-61(c). If the Board declines to review, the Regional Director's unit determinations are final and the Board has no obligation to re-examine them in a subsequent related unfair labor practice proceeding, 29 CFR Sec. 102.69f, Magnesium Casting Co. v. NLRB, 401 U.S. 137, 91 S.Ct. 599, 27 L.Ed.2d 735 (1971). The Board's regulations further specify that "Failure to request review [of the Director's decision] shall preclude such parties from relitigating, in any related subsequent unfair labor practice proceeding, any issue which was, or could have been, raised in the representation proceeding." 29 CFR Sec. 102.67(f). On the issue whether the litigation in the representation proceeding was such as to bar "relitigation" in a subsequent unfair labor practice proceeding, the decisional framework is stated in terms of fairness. See Riverside Press, Inc. v. NLRB, 415 F.2d 281, 284 (5th Cir. 1969):
 
 
 26
 The issue is one of fairness: was the particular point that arises in the unfair labor practice proceeding significant and actually contested at the prior hearing, and was it clearly focused in terms of the issue arising in the later unfair labor practice charge.
 
 
 27
 In another context we gave a restrictive reading to the relitigation bar of Sec. 102.67(f), and the scope of "related subsequent unfair labor practice proceeding" in both the interest of fairness, taking account of an ambiguous context for the rule, and in the interest of expediting elections. Amalgamated Clothing Workers v. NLRB [Sagamore Shirt Co.], 124 U.S.App.D.C. 365, 365 F.2d 898 (1968). We held that the failure to file exceptions to the Director's determination that floor ladies were not supervisors was conclusive as to the representation proceeding, and as to an unfair labor practice proceeding based on a refusal to bargain with the union certified after the election, but was not conclusive for purposes of determination of other issues in an unfair labor practice proceeding not directly growing out of the election.
 
 
 28
 Where, however the two proceedings are related, the sense of overall fairness in preventing relitigation is not undercut by the fact that the determination, eventually held binding so as to bar relitigation, comes out of a representation hearing conducted by a hearing officer appointed by the Regional Director, and not by a trial examiner appointed in accordance with the Administrative Procedure Act. NLRB v. Rexall Chemical Co., 370 F.2d 363 (1st Cir. 1967).
 
 
 29
 The courts have been attentive to the need for harmonizing sound administration of the agency and individual fairness. Hard problems have arisen in other cases. But the case before us is a simple one. This is not the effect of a determination in a representation proceeding as a bar to relitigation in a subsequent unfair labor practice proceeding. This was a hearing in a representation proceeding, involving objections to a past election, conducted simultaneously with the hearing conducted by the Trial Examiner in the unfair labor practice proceeding.
 
 
 30
 When the election has already been held, the pertinent regulations are in 29 CFR Sec. 102.69. Section 102.69(a) authorizes "any party" to file "objections to the conduct of the election or conduct affecting the results of the election, which shall contain a short statement of the reasons therefor." If no objections are filed within five days, Sec. 102.69(b) directs immediate certification of the results by the regional office.[9] When the parties have signed a "consent-election agreement," this provides that final authority over disputes be vested in the regional director, see 29 CFR Sec. 102.62(a). When, as here, the parties have signed a stipulation for certification upon a consent election, this provides for final determination of disputes by the Board (just as in cases where there is no consent to an election and the election is held on order of the regional director), see 29 CFR Sec. 102.62(b), and the function of the regional director is to transmit to the Board his report and recommendation concerning any dispute, see 29 CFR Sec. 102.62(b). When a party files objections to an election which must ultimately be ruled on by the Board, 29 CFR Sec. 102.69(c) provides that the Regional Director shall prepare a report and recommendations on the election and objections, to be forwarded to the Board for use in deciding what further action to take. Within eight days "any party" may file exceptions to the Regional Director's report. If no exceptions are filed, Sec. 102.69(c), or if they "do not raise substantial and material issues with respect to the conduct or results of the election," Sec. 102.69(e), the Board may make whatever disposition of the case it feels appropriate, including disposition on the record as it then exists. If on the other hand exceptions are filed and they do raise "substantial and material factual issues, the Board may direct the regional director . . . to issue and cause to be served on the parties a notice of hearing on said exceptions before a hearing officer," Sec. 102.69(e).
 
 
 31
 The Company seeks to take comfort from the fact that the Regional Director only recommended a hearing. It says (Br. 6): "Under this circumstance, common sense and sensible principles of practice and procedure would direct that the Company did not have to seek review of the denial of the interlocutory motion. . . . [because] The complaint provided an avenue for appeal of the Regional Director's denial of the motion." The Company argues that it reasonably concluded that any attempt to seek Board review of the Regional Director's decision would have been futile since its exceptions "would have been perfunctorily referred to the trial examiner for consideration at the hearing already scheduled (in the unfair labor practice proceeding)."
 
 
 32
 The short answer is that the Company is now raising a procedural objection that would, if valid, have entirely rejected the Union's objection to the certification of the election results. Yet the Company failed to except to the Regional Director's recommendation that a hearing be held. The Company cannot even claim the virtue of having borne in silence an "interlocutory" decision rather than further burden an already overburdened Board. Here the matter was necessarily at the Board level for determination whether to order a hearing in the representation proceeding. The Company had the procedural right to file exceptions. It was incumbent on the Company to identify, by appropriate exception, whatever reason there might be for deciding not to order a hearing in the representation proceeding.
 
 
 33
 We see no basis for a different doctrine even assuming that a separate, though inter-related, unfair labor practice proceeding was underway in any event. If the Board had promptly ruled on the Company's claim, for or against the Company, the subsequent proceeding might well have been substantially shortened. The Company contends that the Union's timely "objection" was not sufficiently specific. This is a requirement in aid of Board administration. The objective of expedition in elections has a corollary in expedition of certification of their results. To stop the wheels there must be a meaningful objection--supported promptly with detailed proof. The Board gives the employers standing to protest the sufficiency of a union's objection[10]--and the vigilance of the employers may help protect the election process of election-and-certification against delays from perfunctory union objections. Similarly, unions may protest the sufficiency of employer objections. But either way the protest should be promptly made at the regional level and promptly pursued to the Board level. Otherwise we see no reasonable basis for failing to come to grip with the merits of the matter.
 
 III. THE REMEDY ISSUE
 
 34
 In its petition for review of the Board's order, the Union challenges the Board's refusal to order the compensatory remedy recommended by the Trial Examiner. Insofar as the Board's statutory authority is concerned, we need do no more than refer to our decisions in Tiidee Products[11] and Ex-Cell-O[12]. However, in Ex-Cell-O we pointed out that while an employer's "frivolous litigation" may trigger compensatory liability, such liability "may be inappropriate where the challenge is based on a 'debatable question."' Here, the Company's claims regarding the Union's election objections were arguable.
 
 
 35
 In the interest of justice our disposition is like that reached in Ex-Cell-O.
 
 
 36
 The Union's petition to review is denied. The Board's application for enforcement is granted.
 
 
 37
 So ordered.
 
 
 
 [1]
 185 N.L.R.B. No. 109
 
 
 [2]
 The Act appears at 29 U.S.C. Sec. 151 et seq. We shall omit the section numbers in Title 29 for particular sections of the Act since they are readily identified-- e. g., Sec. 7 of the Act is 29 U.S.C. Sec. 157
 
 
 [3]
 International Union of Elec. Workers v. NLRB (Tiidee Products, Inc.), 138 U.S.App.D.C. 249, 426 F.2d 1243 (1970), cert. denied, 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed.2d 256 (1970); International Union, UAW v. NLRB, 145 U.S.App. D.C. 384, 449 F.2d 1046 (1971)
 
 
 [4]
 The Union sought to represent all employees except "janitors, employees in the meat department, store manager, watchmen, and guards and supervisor as defined in the Act." J.A. 159
 
 
 [5]
 Citing Irving Air Chute Company, 149 NLRB 627, 629-630 (1964), enforced, 350 F.2d 176 2d Cir. 1965)
 
 
 [6]
 Riverside Press, Inc. v. NLRB, 415 F.2d 281, 285 (5th Cir. 1969)
 
 
 [7]
 The Board's regulations provide, 29 CFR Sec. 102.69(a), that within 5 days after the tally of ballots has been furnished, any party may file with the regional director "objections to the conduct of the election or conduct affecting the results of the election, which shall contain a short statement of the reasons therefor."
 20Issues litigated in the representation proceeding cannot be relitigated in a related complaint case. L. L. Glascock, Inc., 160 NLRB No. 74, footnote 1; S. H. Lynch and Company, Inc., 160 NLRB No. 8, and cases cited in footnote 4; Heights Funeral Homes, Inc., 159 NLRB No. 69; American Oil Company, 106 NLRB No. 46. Presumably this rule is applicable to the present situation even though the ruling in question was interlocutory rather than part of a "final" decision in the representation case.
 
 
 [8]
 Kallas had previously rejected an offer of reinstatement. His recovery was limited accordingly
 
 
 [9]
 There appears to be some uncertainty over whether the Board or the Regional Director must certify an election whose illegality comes to light other than by way of properly filed objections. Compare Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch, 116 U.S. App.D.C. 243, 322 F.2d 993 (1963) and Midway Clover Farm Market v. NLRB, infra, with NLRB v. Reliance Steel Products Co., 322 F.2d 49 (5th Cir. 1963). Because we reject the Company's attack on the Union's objections, we do not reach that issue
 
 
 [10]
 In a post-oral argument memorandum filed at our request, the Union suggests the Company lacks standing to challenge the sufficiency of the Union's objection. It argues that the Board's rules in this regard are for its benefit only, and do not create obligations enforceable by the contesting parties, citing Midway Clover Farm Market, Inc. v. NLRB, D.C., 318 F.Supp. 375, 378:
 The purpose of these rules is simply to provide a manner in which the Board may be apprised of alleged election irregularities and not to limit the Board's authority to overturn invalid elections where the Board receives notice of these irregularities by other means.
 The Board held that the Company has standing to raise the issue of the sufficiency of the Union's objections. This ruling concerning its regulations and procedure is within its authority. In effect the ruling considers that while the regulations involved do indeed serve the Board's purposes, they are additionally intended to serve as a kind of first pleading in these cases, giving the other party notice of the general nature of the objections, enabling him to preserve evidence relevant to the charge. See NLRB v. Raymond Pearson, Inc., 243 F.2d 456 (5th Cir. 1957).
 
 
 [11]
 IUERMW [Tiidee Products] v. NLRB, 138 U.S.App.D.C. 249, 426 F.2d 1243, cert. denied, 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed.2d 256 (1970)
 
 
 [12]
 International Union, UAW [Ex-Cell-O Corp.] v. NLRB, 145 U.S.App.D.C. 384, 449 F.2d 1046 (1971)