Charles NASEM, Appellant,

v.

Honorable Harold BROWN, Secretary of the Department of Defense, et al.

No. 77–1958.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 30, 1978.

Decided Jan. 17, 1979.

Rehearing Denied April 10, 1979.

Lawrence Speiser, Washington, D. C., for appellant. L. M. Pellerzi and William J. Mahannah, Washington, D. C., were on the brief for appellant.

Regina C. McGranery, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Peter E. George, and Tobey W. Kaczensky, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellees.

\* Sitting by designation pursuant to 28 U.S.C. § 294(d).

Before WRIGHT, Chief Judge, J. EDWARD LUMBARD, Senior Circuit Judge for the Second Circuit,\* and TAMM, Circuit Judge.

Opinion for the court filed by TAMM, Circuit Judge.

TAMM, Circuit Judge:

This appeal is from a decision of the United States District Court for the District of Columbia (Hart, J.) holding that the Army was not barred by the doctrine of collateral estoppel from relitigating in a Title VII action issues decided, in an earlier proceeding, by the United States Civil Service Commission's Office of Federal Equal Employment Opportunity (OFEEO) pursuant to 5 C.F.R. § 713.262(b) (1974). Because we believe that the administrative proceeding did not meet the test for giving collateral estoppel effect to administrative action promulgated by the Supreme Court in *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 418–23, 98 S.Ct. 1545, 16 L.Ed.2d 642 (1966), we affirm the district court's judgment.

I

On April 29, 1974, Charles Nasem, plaintiff below, appellant here, was hired, in a probationary capacity, as a Computer Equipment Analyst in the Word Processing Branch of the United States Army's Adjutant General Center. During the time pertinent to this litigation, Nasem's immediate supervisor was Major Conrad Boterweg III who reported to Lieutenant Colonel Richard S. Seeberg.

On September 16, 1974, Nasem received a Warning Letter from Seeberg informing him that his performance was inadequate.[1] Seeberg gave Nasem until November 15, 1974 to demonstrate that he was able to meet the minimum standards of the job.

1. The letter stated that Nasem's work production was inadequate, that he failed to meet deadlines, and that he repeatedly exceeded his authority. Joint Appendix (J.A.) at 185–89.

Seeberg stated that if Nasem did not improve by that date, Seeberg would recommend against Nasem's retention as a probationary employee. On October 24, 1974, Nasem, who is a Moslem of Pakistani origin, filed a discrimination complaint with the Army alleging that Major Boterweg had discriminated against him on the basis of race and national origin.[2] On November 23, 1974, Nasem received a Notice of Extension of Warning Period which extended the period of evaluation of his job performance to January 15, 1975.[3]

Nasem received an Advance Notice of Proposed Termination During Probation on January 24, 1975. In this letter Seeberg informed Nasem that his performance had not improved, and proposed to terminate his employment in seven days. On January 27, 1975 and February 7, 1975, Nasem filed a charge of reprisal[4] under 5 C.F.R. § 713.-262(b)(1) (1974) in which he alleged that his superiors had taken action against him because he had filed a discrimination complaint on October 24, 1974. On February 21, 1975, Nasem was discharged. On March 25, 1975, Nasem filed a second discrimination complaint.

Nasem could have pursued his reprisal complaint in either of two ways—as an independent claim of discrimination under 5 C.F.R. §§ 713.211–222 (1974)[5] or as a charge of reprisal under 5 C.F.R. § 713.-262(b)(1) (1974). See 5 C.F.R. § 713.262(a) (1974). Nasem chose the second method which requires that a charge containing all

pertinent facts be filed within fifteen days of the date of the alleged occurrence. The employee's agency then has fifteen days to investigate the charge and make its own report to the Civil Service Commission. A complaints examiner renders a decision on the basis of the submitted papers.

After Nasem filed his reprisal charge, the Army submitted a report by an equal employment opportunity specialist, Administrative Record IV at 520, that surveyed the reprisal allegations. The report concluded that "there is insufficient evidence to support that acts of reprisal were taken against Mr. Nasem because he filed a complaint of discrimination." Id. at 525.

On April 10, 1975, Anthony Hudson, the Director of the OFEEO, upheld Nasem's reprisal charge upon consideration of Nasem's two letters of complaint and the Army's reply. Mr. Hudson's report stated:

We have carefully reviewed the Department's own report of inquiry on the charge of reprisal filed by Mr. Charles Nasem. We acknowledge that the Department did indeed, have difficulty in supporting or refuting the alleged acts of reprisal, as it states in its own report. The Department's report, speaks only to some of the issues raised by Mr. Nasem, and offers no evidence to refute those allegations. Many of the issues that the report allegedly covers are left unanswered. The Department has not offered a scintilla of fact or evidence to dispute Mr. Nasem's allegation that his termina-

2. Nasem made four allegations of discriminatory acts pursuant to 5 C.F.R. § 713.214 (1974): 1) an unwarranted warning letter, 2) switch in work assignments, 3) denial of training and study, and 4) creation of duplicate work and preferential treatment of non-minorities. J.A. at 193.

3. The extension was made so that Nasem would not, in any event, be fired during the holiday season. Id. at 195.

4. See 5 C.F.R. § 713.261 (1974) which, in pertinent part, provides that complainants "shall be free from restraint, interference, coercion, discrimination, or reprisal at any stage in the presentation and processing of a complaint."

5. Under 5 C.F.R. §§ 713.211–222, a complaint of discrimination is referred initially to an Equal Employment Opportunity Counselor. In accordance with certain time provisions, a complaint can thereafter be investigated by the employee's agency and the agency may propose an informal adjustment of the complaint on the basis of the investigative report. The complainant may, however, seek a formal hearing on the charge before a complaints examiner. At the hearing, the complainant, represented by counsel, may present evidence and cross-examine witnesses. After the close of the hearing, the complaints examiner forwards the record of the hearing, his findings and analysis, and a recommended decision to the head of the employee's agency who then makes a final written decision.

tion came about because of his having filed a discrimination complaint. . .

There being no rebuttal or refutation from the Department, to demonstrate that final termination of the complainant, withholding of scheduled training, cancellation of TDY [tour of duty], and other cited actions were not based on reprisal, and there being only silence on many of Mr. Nasem's charges, we can only find, absent any evidence to the contrary, that the Department of the Army . . . did take reprisal against Mr. Charles Nasem, in connection with his presentation of a discrimination complaint.

Joint Appendix (J.A.) at 30. Accordingly, the OFEEO ordered the Army to restore Nasem to duty with back pay and without break in service by April 21, 1975.

Nasem returned to work on Monday, April twenty-first. On April 29, 1975, he received a second Advance Notice of Proposed Removal from Seeberg announcing that he would be removed for inefficiency based on his failure to perform three 1974 work assignments. The letter repeated verbatim the charges leveled against Nasem on January 24, 1975 in the first Advance Notice of Proposed Removal. On May 6, 1975 and May 8, 1975, Nasem claimed that the second Advance Notice was also in reprisal for his filing the October 24, 1974 discrimination complaint, and requested review under 5 C.F.R. § 713.262(b)(1). This time the Army appointed a Board of Inquiry (Board) to investigate the reprisal charge. The Board re-examined the allegations of reprisal reviewed in the April 10, 1975 OFEEO decision, as well as additional allegations made in the two May letters. The Board found that there had been no reprisal. On June 4, 1975, the OFEEO decided that the Army had now presented sufficient evidence to rebut Nasem's charge of reprisal. The OFEEO, however, made no findings concerning the merits of Nasem's proposed removal. J.A. at 36.

In addition to filing the reprisal charge in May 1975, Nasem also responded to the substance of the April 29, 1975 Advance Notice of Proposed Removal. On June 16, 1975, the Army decided that the reasons for Nasem's proposed removal were supported by substantial evidence. Id. at 37–38. Nasem's removal became effective on July 27, 1975.[6] On July 1, 1975, Nasem appealed his removal to the Federal Employees Appeals Authority (FEAA) of the Civil Service Commission.

The FEAA considered Nasem's appeal of his removal and his two discrimination charges filed on October 24, 1974 and March 25, 1975. Id. at 150. After a hearing held on October 28, 1975, the FEAA reviewed the reasons for removal given in the April 29, 1975 letter and sustained the charge of inefficiency. Id. at 153–66. The Commission rejected Nasem's discrimination claims, id. at 168, as well as a motion for summary reversal, id. at 171. Nasem argued that the Army was collaterally estopped from introducing evidence of his job performance because the OFEEO's April 10, 1975 decision found that the Army's earlier attempt to fire him, based on the identical charges of inefficiency, constituted illegal reprisal for the filing of a discrimination complaint. The FEAA stated, however, that this decision did not "reach the merits of either the notice of proposed removal or the appellant's allegations of discrimination." Id. at 165. Therefore, the FEAA concluded that the April tenth decision did not have either res judicata or collateral estoppel effect on the subsequent proceedings.

On March 8, 1976, Nasem filed a suit in the United States District Court for the District of Columbia seeking review of the FEAA's decision pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16 (1976). Nasem moved for summary judgment arguing that the doctrine of collateral estoppel precluded the district court from considering the validity of his

---

6. The Army notified Nasem on June 16, 1975, that he would be removed effective June 18, 1975. The discharge did not become effective until July 27, 1975, because Nasem successfully secured a temporary restraining order which was not dissolved until July 25, 1975. *Nasem v. Schlesinger*, C.A. No. 75–989 (D.D.C., filed July 9, 1975); J.A. 177–79.

discharge. He asserted that because a valid non-discriminatory basis for discharge forecloses a determination of reprisal, the April tenth OFEEO decision prevented the Army from relying on the grounds which supported the claim of inefficiency in the first Advance Notice. The district court rejected the motion finding that the April tenth decision was not "a decision on the merits." Hearing of April 12, 1977 at 27. Subsequently, the district court conducted a de novo review of Nasem's claims and found that he had not been discriminated against, that no reprisals were taken against him, and that he was terminated for failure to perform adequately. Accordingly, the district court ordered judgment for the defendants. J.A. at 202–03.[7]

## II

█ Collateral estoppel bars relitigation of an issue actually and necessarily litigated and determined in a prior final judgment. *Stebbins v. Keystone Insurance Co.,* 156 U.S.App.D.C. 326, 331, 481 F.2d 501, 506 (1973); *Tutt v. Doby,* 148 U.S.App.D.C. 171, 173, 459 F.2d 1195, 1197 (1972); Restatement (Second) Judgments § 68 (Tent. Draft No. 4, 1977).[8] This case presents the question of whether the doctrine of collateral estoppel should be applied to preclude relitigation in federal district courts of findings made by the OFEEO in a section 713.-262(b)(1) proceeding. Nasem argues that the OFEEO decision of April tenth foreclosed district court consideration of whether the basis of his discharge was valid and whether the Army had ever retaliated against him for filing the October 24, 1974 discrimination charge. We examine each of these contentions to determine whether the traditional elements of collateral estoppel have been met.[9] If so, we then must determine whether the administrative proceedings contained procedural safeguards sufficient to accord the April tenth decision collateral estoppel effect.

### A

Nasem contends that implicit in the April tenth decision finding that he suffered retaliation was the conclusion that the Army lacked sufficient justification for his discharge. He argues that the validity of the Army's allegations of inefficiency, repeated verbatim in the second Advance Notice, was therefore decided in the initial administrative proceeding and cannot be relitigated by the government. The April tenth decision does not review the basis for the first discharge, nor does it explicitly determine the question of discrimination. The order merely sustains, in the absence of adequate refutation, Nasem's retaliation charges. J.A. at 30.

█ Nevertheless, collateral estoppel could attach to a finding that had to be reached in order to make the reprisal finding. If, however, a judgment could be based upon one of several alternate grounds and does not expressly rely on any, then none of the grounds is deemed concluded. F. James & G. Hazard, Civil Procedure § 11.19 (2d ed. 1977). Contrary to Nasem's assertion, the OFEEO could have decided that Army superiors retaliated against Nasem without deciding that their announced reasons for discharge were invalid. "If any element of . . . reprisal played any part in a challenged action, no matter how remote or slight or tangential, the Court would hold that the challenged action was in violation of the law." *United States v. Hayes International Corp.,* 6 FEP Cases

---

7. Nasem raises several other objections to the district court's actions in this appeal. We have considered his arguments and find them without merit.

8. Collateral estoppel does not demand that the parties adjudicate the same cause of action in both the first and second proceedings. This principle, in fact, distinguishes the doctrine of collateral estoppel from that of res judicata.

*See Commissioner v. Sunnen,* 333 U.S. 591, 597–98, 68 S.Ct. 715, 92 L.Ed.2d 898 (1948).

9. "The essence of collateral estoppel by judgment is that some question or fact in dispute has been judicially and finally determined by a court of competent jurisdiction between the same parties or their privies." 1B Moore's Federal Practice ¶ 0.441[2], at 3777 (2d ed. 1974).

1328, 1330 (N.D.Ala.1973). *See Hochstadt v. Worcester Foundation,* 11 FEP Cases 1426, 1431 (D.Mass.), *aff'd,* 545 F.2d 222 (1st Cir. 1976).[10] *See also* B. Schlei & P. Grossman, Employment Discrimination Law 436–40 (1976). Assuming the OFEEO applied this test, a finding of reprisal need not necessarily resolve the underlying validity of the reasons given for discharge. Absent any explicit discussion in the OFEEO opinion of the test applied in the reprisal action, we simply cannot be confident that the substance of the reasons for discharge was adjudicated. Therefore, the April tenth decision cannot collaterally estop litigation of the validity of the non-discriminatory grounds of Nasem's discharge.

The April tenth decision explicitly determined, however, that certain Army actions, including the first Advance Notice, were taken in retaliation for the filing of a discrimination complaint. This finding is directly contrary to the district court's finding that neither the first Advance Notice, nor any other Army actions, retaliated against Nasem. *See* J.A. at 201. If the OFEEO decision has collateral estoppel effect, then we must overturn these findings of the district court.

### B

■ The proposition that administrative proceedings may collaterally estop relitigation in courts is by now well established. *See Cartier v. Secretary of State,* 506 F.2d 191, 196 & n. 3, 165 U.S.App.D.C. 130, 135 (1974); K. Davis, Administrative Law of the Seventies § 18.02 (1976); Note, *The Collateral Estoppel Effect of Administrative Agency Actions in Federal Civil Litigation,* 46 Geo.Wash.L.Rev. 65 (1977). If the traditional elements of the doctrine are met, *see* note 9 *supra,* an administrative decision will be given collateral estoppel effect when "an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it

which the parties have had an adequate opportunity to litigate." *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1552, 16 L.Ed.2d 642 (1966). The Supreme Court's emphasis on the adversariness and adequacy of administrative proceedings is similarly reflected in the exception to application of the doctrine of collateral estoppel when "[a] new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts. . . . ." Restatement (Second) Judgments § 68.1(c) (Tent. Draft No. 4, 1977). *See* Note, *Administrative Collateral Estoppel: The Case of Subpoenas,* 87 Yale L.J. 1247, 1263–64 (1978).

■ Application of the doctrine of collateral estoppel represents a decision that the needs of judicial finality and efficiency outweigh the possible gains of fairness or accuracy from continued litigation of an issue that previously has been considered by a competent tribunal. *See* F. James & G. Hazard, Civil Procedure § 11.2 (2d ed. 1977). The advantages of finality, however, can only be fairly garnered when the party to be estopped has had an adequate opportunity to litigate his claims. Without such an opportunity, lack of faith in the reliability of the first proceeding precludes application of the collateral estoppel doctrine. *See Bowen v. United States,* 570 F.2d 1311, 1322 (7th Cir. 1978); *See also Retail Clerks Union, Local 1401 v. NLRB,* 149 U.S.App.D.C. 370, 376, 463 F.2d 316, 322 (1972).

■ A determination under 5 C.F.R. § 713.262(b)(1) occurs after the complainant has filed a written charge containing all facts pertinent to the alleged reprisal. The complainant's submission must be proffered within fifteen days of the alleged occurrence. Within fifteen days thereafter, the employer agency must investigate the charge and file its response with the

---

10. The *Hochstadt* court allocated the burden of proof as set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and held that "if it is shown that retaliatory discrimination on the part of

the employer contributed among other reasons to cause the discharge, there is a violation of [Title VII]." *Hochstadt v. Worcester Foundation,* 11 FEP Cases 1427, 1431 (D.Mass.), *aff'd,* 545 F.2d 222 (1st Cir. 1976).

OFEEO.[11] The OFEEO resolves the dispute on the basis of these papers. In contrast, the administrative hearing approved by the Supreme Court in *Utah Construction* provided a "full-dress adversary proceeding, with testimony, cross-examination, exhibits, briefs and argument." Brief for the United States at 9, *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 98 S.Ct. 1545, 16 L.Ed.2d 642 (1966). *See, e. g., Painters District Council No. 38 v. Edgewood Contracting Co.*, 416 F.2d 1081, 1084 (5th Cir. 1969).[12]

Section 713.262(b)(1) does not provide procedural safeguards contemplated by *Utah Construction.* We are particularly disturbed by the inability of the parties to present live witness testimony in a proceeding that necessarily turns largely on retaliatory motivation, *see* B. Schlei & P. Grossman, Employment Discrimination Law 438–39 (1976), and thus demands that the decision-maker weigh witness credibility. Similarly, there is no opportunity to cross-examine opposing witnesses, the importance of which cannot be underestimated.[13] Any deficiency in agency process that denies parties the procedural opportunity to present their claims for full agency consideration falls short of *Utah Construction.* Because the section 713.262(b)(1) proceeding significantly differs from the hearing approved in *Utah Construction,* we conclude that the April tenth OFEEO decision cannot collaterally estop relitigation of the reprisal issue in the district court. *See also North Carolina v. Charles Pfizer & Co.*, 537 F.2d 67, 73 (4th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 183, 50 L.Ed.2d 150 (1976); *Coulter v. Weinberger*, 527 F.2d 224, 228 (3d Cir. 1975).

### III

We are not unsympathetic to the plight of a federal employee who files a reprisal charge under section 713.262(b)(1), who wins reinstatement, and who then must fight a similar battle if his employer again attempts to discharge him. We note that Congress sought to compensate for such inadequate administrative proceedings by providing federal employees with a right to trial de novo in the district court of their employment discrimination claims. *Chandler v. Roudebush,* 425 U.S. 840, 861–64, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). Appellant did not avail himself of this right, however, but instead settled for the trial court's de novo review of the administrative record. Brief for Appellant at 4. In that context, the trial judge simply agreed with the conclusions of the second reprisal proceeding rather than the first.

Reasoned decisionmaking demands that courts be mindful of the future effects of the principles they hand down. Were we to resolve this case in appellant's favor, we would ignore the *Utah Construction* test, as well as the rationale supporting application of the doctrine of collateral estoppel. In this case we must balance competing interests—the need for efficiency and finality against the adversariness and adequacy of the first proceeding. The lack of procedural protections contained in section 713.-262(b)(1) compels us to conclude that the OFEEO's finding of reprisal should not be accorded collateral estoppel effect.

Accordingly, the judgment of the district court is

*Affirmed.*

---

**11.** In this case, the Army failed to meet the fifteen-day deadline. Nasem's reprisal charge was filed on January 27, 1975; the Army's response was received by the Civil Service Commission on March 18, 1975. J.A. at 29.

**12.** In *Painters District Council,* the court awarded collateral estoppel effect in a civil damages action to NLRB determinations after "the Board had conducted a full hearing, with the . . . parties represented by counsel . . . ., with full opportunity to present evidence, and to call, examine, and cross-examine witnesses. Both parties made oral argument." *Painters Dist. Council No. 38 v. Edgewood Contracting Co.*, 416 F.2d 1081, 1084 (5th Cir. 1969).

**13.** Cross-examination creates incentives for witnesses to tell the truth and allows exposure of mistaken perception or memory. *See* Morgan, *Hearsay Dangers and the Application of the Hearsay Concept,* 62 Harv.L.Rev. 177, 186, 188 (1948).