**Wilhelmina MOORE, Plaintiff,**

**v.**

**Henry E. BONNER, individually and in his official capacity as Superintendent of Schools for Berkeley County and Chairman of the Berkeley County Board of Education; Marvin Wiggins, Joseph Myers, Harold Staley, Graydon Gray, James Barry, Carolyn Lewis, Dorothy Bryan, David Fashion, J. P. Peagler and Roy Strickland, each individually and in his or her official capacity as a member of The Berkeley County Board of Education and The Berkeley County School District, Defendants.**

**Civ. A. No. 80–1540–1.**

United States District Court,
D. South Carolina,
Charleston Division.

Nov. 5, 1981.

Elliott T. Halio and Allan R. Holmes, Halio & Holmes and Arthur C. McFarland, Charleston, S. C., for plaintiff.

Kenneth L. Childs and David T. Duff, Childs & Duff, Columbia, S. C., R. Markley Dennis, Jr., Dennis, Dennis & Watson, Moncks Corner, S. C., for defendants.

## ORDER

HAWKINS, District Judge.

### PRELIMINARY STATEMENT

Before the court is defendants' motion for summary judgment. The motion is based, *inter alia*, on the defenses of res judicata and/or collateral estoppel, statute of limitations, and failure to plead necessary facts, as well as the absence of genuine issues of material fact, thus foreclosing liability, with respect to several of plaintiff's theories of recovery. Having fully considered the briefs which have been filed and the arguments of counsel at the hearing held in the matter on September 21, 1981, and after receiving additional letter briefs from counsel subsequent to the argument, the court enters the following order granting defendants' motion on the basis of administrative collateral estoppel.[1]

This action was brought pursuant to the Civil Rights Acts of 1886 and 1871, Sections 1981, 1983 and 1985(3) of Title 42 of the United States Code, to redress alleged violations of plaintiff's rights under the First, Fifth, Thirteenth,[2] and Fourteenth Amendments to the Federal Constitution in regard to the defendants' decision not to renew plaintiff's teaching contract for the school year 1980–81. More specifically, plaintiff claims that the decision not to renew her contract was the product of race discrimination and retaliation for the exercise of her rights to free speech and association rather than the result of her unprofessional conduct and insubordination as determined by defendant Berkeley County Board of Education. Plaintiff also alleges that the manner in which the decision to nonrenew her contract was reached constitutes a denial of her right to procedural due process.

### FACTS

The facts relevant to the motion and the procedural history to this action are largely undisputed. The precipitating incident in plaintiff's nonrenewal occurred on January 24, 1980, at the Cross High School within defendant Berkeley County School District, where plaintiff was employed as a guidance counselor. On that date, plaintiff intervened in the administering of a mastery test to students which was being given to them by a Title I reading coordinator, allegedly because neither the students nor their parents had been provided the customary advance notice of the examination. According to the complaint, an angry discussion ensued between the plaintiff and the reading coordinator, who was a white female.

Following the January 24th[3] incident, plaintiff was requested by defendant Henry E. Bonner, Superintendent of the School District, to provide a written description of what transpired on that date concerning her actions with respect to the administration of the test. Plaintiff responded with a two-sentence letter,[4] which defendant Bonner apparently considered insufficient as a description of the incident.

---

1. Defendants' motion to amend their answer to raise res judicata and/or collateral estoppel was granted by this court on September 21, 1981.

2. Defendants are entitled to summary judgment on plaintiff's Fifth and Thirteenth Amendment claims independent of their res judicata and/or collateral estoppel defense. Allegations with respect to the Fifth Amendment are immaterial in a civil rights action against officials of a state or a political subdivision thereof. *Maniaci v. Warren*, 314 F.Supp. 853, 855 n.2 (W.D.Wis.1970). In addition, plaintiff may not base a claim directly on the Thirteenth Amendment. That amendment provides the constitutional basis for Congress to determine what constitutes "badges and incidents" of slavery and to translate that determination into effective legislation. *See, Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 439, 88 S.Ct. 2186, 2203, 20 L.Ed.2d 1189 (1968). Thus, the Thirteenth Amendment is the constitutional underpinning for various implementing statutes, such as 42 U.S.C. § 1981, but does not itself grant a substantive right which may be directly enforced.

3. Unless otherwise indicated, all dates refer to the year 1980.

4. Plaintiff's letter stated only: "The Test was not previously explained to me as guidance Director. Also, the student [sic] and parents were not previously informed about the Test."

By letter dated February 19, Bonner stated to plaintiff that her written "description" was not satisfactory. He asked that she explain in more detail what had taken place on January 24th and why plaintiff had believed she should involve herself in the administration of the reading test. The letter also indicated that plaintiff's explanation might have a bearing on whether or not she would be recommended for reemployment during the 1980–81 school year.

Plaintiff responded to the February 19th correspondence with a letter in which she indicated her desire, if charges had been brought against her, to be given a written statement of such allegations along with the identity of the individual making the charges. Because Bonner had stated that her response might have an effect on her reemployment, plaintiff also requested an open public hearing before the Board of Education on the matter. Plaintiff's letter to Bonner did not contain any description of the January 24th incident.

By letter dated April 1st, Bonner informed plaintiff that she had deliberately disregarded the instructions of his February 19th correspondence to provide a written account of the incident on January 24th. He stated that, as a consequence, he was planning to recommend to the Board of Education that her contract not be renewed for the following year. Bonner further stated that if the Board of Education upheld his recommendation, the plaintiff would then be entitled to a formal hearing on the question of her nonrenewal. It appears that Bonner heard nothing more from the plaintiff.

On April 14th, Bonner notified plaintiff that at a special meeting held on April 10th, the Board of Education had voted not to renew her contract for the 1980–81 school year. Plaintiff also was informed at this time of her right to request in writing a formal hearing before the Board. She subsequently did invoke her right to a hearing, which was held on May 6th, pursuant to the provisions of the South Carolina Teacher Employment and Dismissal Act, S.C.Code Ann. § 59–25–410, et seq. (1976 and 1980 Cum.Supp.).

By letter dated May 16th, plaintiff was informed that upon consideration of the case subsequent to the hearing, the Board had voted to uphold the earlier determination not to renew her contract. The reasons given for the dismissal were plaintiff's unprofessional conduct and insubordination in connection with the January 24th incident and its aftermath. Plaintiff did not appeal the Board's decision to the state circuit court as she might have done within thirty days under South Carolina law. See, S.C.Code Ann. § 59–25–480 (1976). The plaintiff filed a claim with the South Carolina Employment Security Commission and on August 7, 1980, the claims adjudicator found in favor of her. This finding was appealed to the Appeals Tribunal and on September 22, 1980, the prior finding of the claims adjudicator was upheld. On August 15th, plaintiff filed the present complaint challenging her nonrenewal in federal court.

## DISCUSSION

It is the defendants' contention, based on the decision of the Berkeley County Board of Education upholding plaintiff's dismissal on the grounds of unprofessional conduct and insubordination, that the instant suit is barred under the doctrine of res judicata, or at a minimum that the Board's determination as to the reasons for the dismissal is entitled to preclusive effect under the principle of collateral estoppel.[5] Plaintiff argues that, at least under the present circumstances, a state administrative proceeding cannot support a finding of res judicata or collateral estoppel in a subsequent judicial action brought under the civil rights law.

Plaintiff's argument is essentially rebutted by two decisions of the United States Supreme Court, *Allen v. McCurry*, 449 U.S.

---

5. The Restatement of Judgments now refers to res judicata as "claim preclusion" and collateral estoppel as "issue preclusion." Restatement of Judgments (Second) § 74 (Ten.Draft No. 3, 1976).

90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), and *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). In *United States v. Utah Construction & Mining Co., supra*, the Court followed the more modern view [6] that res judicata and collateral estoppel principles do apply to administrative determinations. The *Utah Construction & Mining* holding has expressly been followed by the court of appeals for this circuit. *See, Pettus v. American Airlines, Inc.*, 587 F.2d 627, 628 n.1 (4th Cir. 1979), *cert. denied*, 444 U.S. 883, 100 S.Ct. 172, 62 L.Ed.2d 112 (1979) ("The fact that the decision-maker in the initial adjudication was an administrative agency is of no consequence. For '[r]es judicata effect may attach to determinations of administrative agencies in appropriate circumstances.'"). In *Allen v. McCurry, supra*, the Court held that rules of res judicata and collateral estoppel are generally applicable to civil rights actions initiated pursuant to Section 1983.[7] The Court based its decision on the legislative history of Section 1983 and the strong policy considerations central to the doctrines of res judicata, collateral estoppel, and federalism.

■ In determining when an administrative action constitutes res judicata or collateral estoppel, the question to be answered is whether the administrative body "is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties ... had adequate opportunity to litigate ... [in that] both parties had a full and fair opportunity to argue their version of the facts and an opportunity to seek court review of any adverse findings." *United States v. Utah Construction & Mining Co., supra* 384 U.S. at 422, 86 S.Ct. at 1560. It is this court's opinion that the criteria for application of res judicata and/or collateral estoppel to an administrative determination have been satisfied in the present case.

Initially, it is clear that the Berkeley County Board of Education functioned as an adjudicative body at the May 6th hearing when it considered the question of plaintiff's nonrenewal, which question was certainly a matter properly before it under the relevant state statute. Pursuant to the Teacher Employment and Dismissal Act, a teacher who receives notice that he or she will not be reemployed for the ensuing year may, within fifteen days of notification, request in writing a hearing before the district board of trustees. *See,* S.C.Code Ann. §§ 59–25–420 (1976), 59–25–460 (Cum. Supp.1980) and 59–25–470 Cum.Supp.1980). When the requested hearing is convened, the superintendent is to initiate the introduction of evidence in substantiation of the charges. The teacher subject to dismissal may present any and all defenses to the charges. *See,* S.C.Code Ann. § 59–25–470 (Cum.Supp.1980). The board is directed by the statute to determine whether the evidence showed good and just cause for the notice of dismissal and to render its decision affirming or withdrawing the notice. *Id.*

The proceeding before the Berkeley County Board not only was adjudicative in nature, but also provided plaintiff virtually a judicial-type forum in which to present her case. In *Painters District Council 38 v. Edgewood Construction Co.*, 416 F.2d 1081 (5th Cir. 1969), the court described, under the *Utah Construction* standards, what is considered to be the minimum procedures to establish a trial-like proceeding so that administrative res judicata or collateral estoppel would apply. Those procedures included a full hearing; representation by counsel; a full opportunity to present evidence; and the right to call, examine, and cross-examine witnesses. It is apparent that these criteria were abundantly met, and even surpassed, in the present case. The plaintiff,

**6.** *See,* 2 Davis, *Administrative Law,* § 18.12 (Supp.1965).

**7.** In this court's opinion, there is no valid reason for distinguishing among § 1983 and §§ 1981 and 1985 for purposes of determining the res judicata or collateral estoppel effect of an administrative decision. *See, Sinicropi v. Nassau County,* 601 F.2d 60, 62 (2d Cir. 1979), *cert. denied,* 444 U.S. 983, 100 S.Ct. 488, 62 L.Ed.2d 411 (1979); *Gear v. City of Des Moines,* 514 F.Supp. 1218, 1224 (S.D.Iowa 1981).

in addition to being afforded all the procedures extant in *Painters District Council*, was entitled under the Employment and Dismissal Act to engage in discovery by availing herself of the Act's pre-hearing deposition procedures. *See*, S.C.Code Ann. § 59–25–490 (1976). Plaintiff also was entitled under the statute to invoke the Board's subpoena power, which the Board is specifically granted for the purpose, to require the attendance of up to ten witnesses to assist in the presentation of her case. *See*, S.C. Code Ann. § 59–25–460 (Cum.Supp.1980).

It is also apparent, despite plaintiff's contentions to the contrary, that the administrative hearing before the Board offered plaintiff a fair, as well as a full, opportunity to argue the issues on their legal or factual merits. Plaintiff asserts that she was deprived of a fair opportunity to argue her version of the facts because the Board at the May 6th hearing was improperly biased or tainted with prejudgment due to prior involvement in, or familiarity with, the matter on the part of Board members. In this regard, plaintiff alludes to the Board's role in approving the Superintendent's earlier recommendation of nonrenewal.

■ The plaintiff's contention ignores the "presumption of honesty and integrity" in Board members as adjudicators established by *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975), which requires a showing of actual bias by decision-makers. As the Court subsequently stated in *Hortonville Joint School District v. Hortonville Education Association*, 426 U.S. 482, 496–97, 96 S.Ct. 2308, 2315–16, 49 L.Ed.2d 1 (1976):

[a] showing that the Board was "involved" in the events preceding this decision, in light of the important interest in leaving with the Board the power given by the state legislature, is not enough to overcome the presumption of honesty and integrity in policymakers with decision-making power.

■ Under this standard, the Board's prior involvement in the case when it voted to approve defendant Bonner's recommendation not to renew, subject to plaintiff's right to appeal, does not give rise to a claim of impermissible prior involvement or taint by Board members. If an initial, tentative determination is made subject to a right of review and such determination does not result in the exposure of official decision-makers to extrajudicial bias, then the makers of the initial decision will not be subject to disqualification because of their initial determination. *Duffield v. Charleston Area Medical Center, Inc.*, 503 F.2d 512, 517 (4th Cir. 1974).[8]

According to the criteria set forth in *Utah Construction*, the opportunity for some type of judicial review on a record is a further factor in determining whether res judicata or collateral estoppel apply to the decision of an administrative body. Plaintiff's right to seek court review of the Board's determination is established pursuant to the Employment and Dismissal Act, S.C.Code Ann. § 59–25–480 (1976), which states that an appeal of the decision by the district board may be taken to the court of common pleas within thirty days of the decision, and thereafter to the state supreme court in the same manner as provided for cases at law. That plaintiff chose not to avail herself of these rights to judicial appeal does not alter the analysis.

A related consideration focuses on the intention of the administrative body and the expectations of the parties before it on the question of finality. *See, Mitchell v. National Broadcasting Co.*, 553 F.2d 265, 269 (2d Cir. 1977). The Employment and Dismissal Act states that the district board's decision "shall be final" unless an appeal is made to the courts. If an appeal is taken, the reviewing court is limited to a determination whether substantial evidence exists in the record to support the board's

---

8. The court in *Duffield* stated the test for judging the partiality of a hearing officer to be "that the bias and familiarity with a case, which will disqualify, 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.' " 503 F.2d at 517 (citation omitted).

decision. *Laws v. Richland County School District*, 270 S.C. 492, 495–496, 243 S.E.2d 192, 193 (1978). It is therefore apparent that the expectations of the parties and the district board regarding the final effect to be given the administrative decision is severely circumscribed by the statute and the decisional law. This fact lends considerable incentive for a teacher to diligently pursue his or her claim in the administrative proceedings where, as previously stated, any and all defenses to the charges may be presented. *See, Gear v. City of Des Moines*, 514 F.Supp. 1218, 1222 (S.D.Iowa 1981).

A fourth factor that bears on the question whether an administrative decision is res judicata or collateral estoppel in a subsequent judicial litigation is the effect which such determinations are accorded by courts of the jurisdiction within which they are made. *See, Mitchell v. NBC, supra.* The recent decision of the Supreme Court of South Carolina in *Earle v. Aycock*, 279 S.E.2d 614 (S.C.1981), makes it clear that the unappealed determination of the Board in this case would be given total res judicata effect by South Carolina courts. In *Earle v. Aycock, supra*, the plaintiff, who had been terminated from the Department of Health and Environmental Control because of unauthorized absences, challenged the validity of his discharge before the State Grievance Committee. The Committee upheld the determination, and the plaintiff did not appeal the Committee's decision to the court.

■ The plaintiff subsequently instituted an original action to test the validity of his termination in the state circuit court, which overturned the discharge on the ground that it was discriminatory. The South Carolina Supreme Court, however, reversed, holding:

> Earle appealed his discharge to the State Grievance Committee which upheld the validity of the discharge. *He did not appeal the decision of the committee to the courts.* He is precluded from raising the validity of the discharge in a collateral action as the decision of the committee became the law of the case, and the doctrine of res judicata bars the relitigation of this issue.

279 S.E.2d at 616 (emphasis in original). Based on the decision in *Earle*, there is little doubt that the courts of this state, if presented the opportunity, would give preclusive deference to the unappealed decision of a district school board in a collateral judicial proceeding which challenges the board's determination.

Because it is evident that the instant case presents an otherwise appropriate situation for application of administrative res judicata and/or collateral estoppel, the remaining issue is whether the "right, question or fact" put to rest in the proceeding before the Board are in substance the same as plaintiff seeks to litigate before this court. *See, Montana v. United States*, 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979); *Pettus v. American Airlines, supra* at 628. For the doctrine of res judicata, which bars altogether a second action involving the same parties, to apply, there must exist a substantial identity of the cause of action in both the earlier proceeding and the later suit. *Montana v. United States, supra* 440 U.S. at 155, 99 S.Ct. at 974; *Nash County Board of Education v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981). While a broad definition of "cause of action" in relation to the doctrine of res judicata has developed under modern authorities, *see, Nash County Board of Education, supra* at 487, this court refrains from holding that the "causes of action" in the Board hearing and before this court are the same, even though the same "operative facts" clearly are involved.

■ Under collateral estoppel, once an issue of fact or law necessary to the first determination is decided, that decision may preclude relitigation of the issue in a later suit on a different cause of action involving a party to the first case. *Allen v. McCurry, supra*, 449 U.S. at 94, 101 S.Ct. at 414. The court finds that the ultimate fact resolved in the proceeding before the Board—that the plaintiff's teaching contract was validly nonrenewed for reasons of her unprofessional conduct and insubordination—pre-

vents relitigation of the issue that the failure to renew was not for the asserted reasons.[9]

In a recent decision by an Iowa federal district court, it was held that an administrative determination in the plaintiff's unemployment compensation case that she be denied benefits because of her voluntary termination from employment was entitled to collateral estoppel effect in the plaintiff's subsequent Section 1983 suit alleging a constructive discharge for sexually discriminatory reasons. *Gear v. City of Des Moines, supra.* The court reached this conclusion notwithstanding the plaintiff's contention that the administrative tribunal did not consider whether defendant's conduct deprived her of constitutional protections. *Id.* at 1219–20.

The *Gear* court held under the precept of administrative collateral estoppel that material facts actually or necessarily adjudicated in the employment security agency's hearing formed the sole predicate for the plaintiff's constitutional challenge mounted in federal court. *Id.* at 1223. In essence, the court decided that the administrative finding of voluntary quit was dispositive of the claim under the civil rights cause of action that plaintiff was discharged, constructively or otherwise, for any alleged reason.

■ A similar result may be reached in the present case. The Berkeley County Board of Education's determination that the plaintiff was properly nonrenewed because of unprofessional conduct and insubordination actually and necessarily disposes of her claim that the decision not to renew

was racially motivated or carried out in retaliation for the exercise of First Amendment rights.

The plaintiff argues that the *Gear* opinion, if followed, would entitle the plaintiff to summary relief. The plaintiff points to the fact that the South Carolina Employment Security Commission on September 22, 1980, ruled that Ms. Moore was entitled to benefits because she was separated under "nondisqualifying circumstances." The Commission made this ruling "in the absence of showing that the claimant was guilty of wilful negligence in the performance of her duty of intentional disregard for the interest of the employer . . . ." It is apparently the position of the plaintiff that if a prior determination is to be given preclusive effect in this case, the determination of the Commission is the appropriate one on which to focus.

This court disagrees. It would be inappropriate to give such a proceeding preclusive effect given its very nature. At the hearing before the Commission, the Berkeley County School District was required to demonstrate that the plaintiff was nonrenewed for reasons of "willful misconduct" in order to establish a disqualification. Defendants might very well have been unable to satisfy this standard and yet have terminated the plaintiff for valid and justifiable reasons. The "just cause" type reasons necessary for a decision to nonrenew may exist without the employer being able to satisfy the severe standard required by the unemployment law. In addition, the record reveals that the testimony of the plaintiff at the appeals hearing was accepted by the Commission as "uncontroverted evidence"

---

9. The court notes from the transcript attached to plaintiff's complaint that certain events or incidents which underlie plaintiff's constitutional claims, *i. e.*, her civil rights activities in the early 1970s and an alleged retalitory act which occurred in 1978, were in part the subject of the hearing before the Board of Education. Whether or not plaintiff squarely raised before the Board issues of racially discriminatory motivation and infringement of free speech and association, she clearly had the right and opportunity under the state statute to raise those issues, or to specifically reserve them.

It is also noted that at least one court has now answered in the affirmative the question left open by the Supreme Court in *McCurry* (101 S.Ct. at 415 n.5): A Section 1983 claimant is precluded from litigating in federal court those issues that he might have raised but did not raise in the previous state litigation. *See, Harl v. City of LaSalle,* 506 F.Supp. 1067, 1071 (N.D.Ill.1980); *. see also, Davis v. Towe,* 379 F.Supp. 536, 538 (E.D.Va.1974), *aff'd without opinion,* 526 F.2d 588 (4th Cir. 1975) (final judgment in state common law action entitled to preclusive effect in later federal action under §§ 1983 and 1985).

since the employer did not attend the hearing, sending their attorney instead. Given these considerations, this court is not persuaded that justice would be served by giving the determination by the Employment Security Commission preclusive effect in this case.

In conclusion, the court has determined to accord collateral estoppel effect to the central issue resolved by the Berkeley County Board of Education. The Board's finding as to the reason for plaintiff's nonrenewal encompasses the predicate for, and is thus dispositive of, the plaintiff's civil rights claims before this court. The court, therefore, will grant defendants' motion for summary judgment and cause judgment to be entered in their favor. It is, therefore,

ORDERED, that defendants' motion for summary judgment on the ground of administrative collateral estoppel be, and the same is hereby, granted. The Clerk is directed to cause judgment to be entered in defendants' favor. Each party shall bear their respective costs incurred in this litigation.

AND IT IS SO ORDERED.