717 F.2d 922
 Albert J. MOELLENDICK, Robert Berry and Roland McCulty, Petitioners,
v.
WEST VIRGINIA GOVERNOR'S OFFICE OF ECONOMIC AND COMMUNITY
DEVELOPMENT, and Raymond J. Donovan, Secretary,
United States Department of Labor, Respondents.
 No. 82-1784.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 18, 1983.
Decided Sept. 15, 1983.
 
 Guy R. Bucci, Charleston, W.V., for petitioners.
 Donald L. Darling, Asst. Atty. Gen., Charleston, W.V. (Chauncey H. Browning, Atty. Gen., Brenda Nichols Harper, Sp. Asst. Atty. Gen., Charleston, W.V., on brief) and Harriet A. Gilliam, U.S. Dept. of Labor, Washington, D.C. (Francis X. Lilly, Deputy Sol. of Labor, William H. DuRoss, III, Associate Sol. for Employment and Training, Harry L. Sheinfeld, Washington, D.C., for Litigation on brief), for respondents.
 Before RUSSELL, WIDENER and HALL, Circuit Judges.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 The petitioners seek judicial review of a decision of the Secretary of Labor dismissing their complaints arising from the termination of their employment as Regional Administrators under a CETA-sponsored West Virginia program. See section 817(a) and (b), 29 U.S.C. of the Comprehensive Employment and Training Act, as amended in 1978 (CETA).[1] We dismiss the petition to review and affirm the decision of the Secretary.
 
 
 2
 This controversy arises out of a CETA plan[2] of which the State of West Virginia qualified as a "prime sponsor" responsible for carrying out the plan in the State.[3] Prior to August 19, 1977, the petitioners had been employed as Regional Administrators in specified areas of the State under the plan. Shortly before August, 1977, there was a change in administration in the State Government and a Democratic governor succeeded a Republican governor. In August a complete reorganization of the operations of the State CETA program was promulgated. Under this reorganization the positions theretofore held by the petitioners were to be terminated and replaced by field representatives. The Director of the Office of Employment and Training of the State plan advised the petitioners by letter dated August 19, 1977, that under the reorganization their positions would be terminated on September 6, 1977. They were, however, invited to apply for appointment as field representatives and were given until August 19, 1977 to do so. Attached to the letter inviting them to apply was a description of the new field positions and a statement of job requirements. The petitioners did not apply, but requested a copy of the plan's grievances procedures. They then submitted to the State Director their grievances. Those grievances were dismissed by the Director. The petitioners then filed their grievances administratively with the U.S. Department of Labor.[4] That complaint was referred initially to the Department's Equal Employment Compliance Staff. Following an investigation, the Grant Director issued his "Final Determination" dismissing the complaints and an appeal was taken by the complainants to the Office of Administrative Law Judge of the Department.[5] An Administrative Law Judge had a full hearing on the appeal and filed a decision dismissing the grievances and affirming the determination of the Grant Officer. That decision was not reversed or modified by the Secretary of Labor and, after 30 days, became the final decision of the Secretary.[6] It is that final decision of the Secretary which the petitioners challenge by their petition to review.
 
 
 3
 Basically, the complainants' ground of appeal as raised in the hearing before the ALJ were 1) that the proceedings in the State CETA office did not comply with the procedural requirements of the Act, and 2) that the termination of their employment as regional administrators was politically motivated and violated the express provisions of CETA. We shall consider seriatim those two claims.
 
 
 4
 Addressing first the claim of denial of procedural due process, it is conceded that the petitioners had a right to an "informal hearing" at the State level on their grievances. This is specifically provided in the regulations issued under CETA. Such regulations provide that any "prime sponsor" must "establish a procedure for resolving any issue arising between it ... and a participant under any Title of the Act," such procedure to include "an opportunity for an informal hearing" or "some other process to deal with issues arising between it and any aggrieved party."[7] The ALJ, however, found that the "prime sponsor" in this case had established such "a procedure" for resolving grievances and that the complainants "knew of the grievance procedure but either failed to use it in a timely manner or follow it through to completion." That finding is fully supported in the record and disposes of petitioners' first objection.[8]
 
 
 5
 The petitioners' second objection to the ALJ's decision relates to the disposition of their claim of political motivation in their termination. CETA expressly provides in the regulations that a "sponsor" such as the West Virginia agency in this case "may [not] select, reject or promote a participant [under the program] based on that individual's political affiliation or beliefs."[9] It is the petitioners' position that they were removed because they were Republicans in political affiliation and were replaced by persons with Democratic political affiliation. At the proceedings before the ALJ the petitioners, also, urged the ALJ to find that the entire reorganization in August, 1977, was a political "sham" resorted to simply to provide a means of terminating Republican CETA employees employed under the West Virginia CETA plan. The ALJ, though, found the reorganization legitimate and before us the petitioners do not contest this finding. It follows that petitioners' only grievance must be that they were not reappointed to the new positions that replaced their old positions because of their political affiliation.
 
 
 6
 It is undisputed that the petitioners were given the same opportunity to reapply as all other former regional administrators. Other former administrators, whose Republican affiliation was admitted, were hired after applying. Moreover, 85 percent of the former employees of the agency were retained after the reorganization. In addition, the evidence that those identified by the petitioners as their replacements were Democrats was at best tenuous. In the case of the three replacements, the ALJ found that the petitioners offered "no substantive proof in the record of the political affiliation" of two of them and the evidence of the political affiliation of the third was based merely on a conversation by one of the petitioners with the son of the third replacement. The petitioners did proffer some testimony that an official of the agency, whose ability to hire and fire was not proven, had said the terminations of the petitioners were "political." The official allegedly quoted (Mrs. Kelly), however, denied any such statements and testified positively that, in considering the applications for employment in the reorganization "the prime sponsor did not inquire as to the political beliefs of the Regional Administrators or other applicants." The ALJ, who saw the witnesses and heard the testimony, chose to accept the testimony of Ms. Kelly because "she would have nothing to gain by not telling the truth."
 
 
 7
 The ALJ made the following finding of fact on this claim of the petitioners:
 
 
 8
 "Having considered all the evidence in this record, I find that it does not support the complainants' allegations that they were unjustly terminated and that the reorganization which eliminated the Regional Administrator positions was merely a pretext for political discrimination."
 
 
 9
 On a review of the findings of the ALJ which "findings of fact by the Secretary if supported by substantial evidence, shall be conclusive ..." on us,[10] we are of the opinion that the findings are fully supported by "substantial evidence." The decision of the Secretary on this second claim is accordingly affirmed.
 
 
 10
 Since we have found no merit in either claim for review, the petition for review is dismissed[11] and the decision of the Secretary is affirmed.
 
 
 
 [1]
 For a discussion of the amendments of 1978, see U.S.Code Congr. & Admr.News, 95th Congress, 2d Sess., 1978, at 4480 et seq
 
 
 [2]
 The development of such plans is authorized under the Act "to provide job training and employment opportunities for economically disadvantaged, unemployed, or underemployed persons which will result in an increase in their earned income, and to assure that training and other services lead to maximum employment opportunities and enhance self-sufficiency by establishing a flexible, coordinated, and decentralized system of Federal, State, and local programs. It is further the purpose of this Act to provide for the maximum feasible coordination of plans, programs, and activities under this Act with economic development, community development, and related activities, such as vocational education, vocational rehabilitation, public assistance, self-employment training, and social service programs."
 
 
 [3]
 20 C.F.R. Sec. 676.91(f), "A prime sponsor is a unit of State or local government, or a consortium of such jurisdictions annually designed by the Secretary to plan and administer the program activities of this Act within their jurisdiction." Senate Report, Amendments of 1978, U.S.Code Congr. & Admr.News, 95th Congress, 2d Sess., p. 4492
 
 
 [4]
 Whether the administrative remedy is the exclusive remedy of the petitioners under the Act, see CETA Worker's Org. Committee v. City of New York, 617 F.2d 926, 930-31 (2d Cir.1980); Uniformed Firefighters Ass. v. City of New York, 512 F.Supp. 289, 291 (S.D.N.Y.1981); but, cf., Consortium of Community Based Organizations v. Donovan, 530 F.Supp. 520, 536-40 (E.D.Cal.1982)
 
 
 [5]
 This procedure followed those validly prescribed by the Regulations issued under the Act. That there is authority under the Act for the Secretary to issue such regulations, see Orange County (N.Y.) v. Dept. of Labor, 636 F.2d 889, 890 (2d Cir.1980). Under these regulations grievances, submitted for federal review, go first to a Grant Officer, who, after conducting an investigation, issues a final determination or dismisses the complaint. 20 C.F.R. Sec. 626.88(e). An appeal can be taken from the determination of the Grant Officer to an administrative law judge. 20 C.F.R. Sec. 676.88(f)
 
 
 [6]
 The decision of the Administrative Law Judge becomes the final decision of the Secretary of Labor unless the Secretary modifies or vacates that decision within 30 days after it is rendered. 20 C.F.R. Secs. 676.91(f), 676.92
 
 
 [7]
 29 C.F.R. Sec. 98.26
 
 
 [8]
 See 29 U.S.C. Sec. 817(b)
 
 
 [9]
 29 C.F.R. Secs. 98.21(b)(1) and 98.23(b)
 
 
 [10]
 29 U.S.C. Sec. 817(b); Beutivegna v. U.S. Dept. of Labor, 694 F.2d 619, 621 and 623 (Anderson, dissenting) (9th Cir.1982)
 
 
 [11]
 The petitioners seem to argue that they were denied a hearing as permanent employees of the State of West Virginia and entitled to various rights under West Virginia law as such permanent employees. Those rights are not involved, however, in this proceeding which is concerned only with claims under CETA itself