Roland McCULTY, an individual, Plaintiff,

v.

Honorable John D. ROCKEFELLER, IV, Individually and as Governor of the State of West Virginia, et al., Defendants.

Albert J. MOELLENDICK, an individual, Plaintiff,

v.

Honorable John D. ROCKEFELLER, IV, Individually and as Governor of the State of West Virginia, et al., Defendants.

Robert G. BERRY, an individual, Plaintiff,

v.

Honorable John D. ROCKEFELLER, IV, Individually and as Governor of the State of West Virginia, et al., Defendants.

Civ. A. Nos. 79–2274, 79–2275 and 79–2276.

United States District Court, S.D. West Virginia, Charleston Division.

Sept. 21, 1983.

Guy R. Bucci, Charleston, W.Va., for plaintiffs.

Donald L. Darling, Asst. Atty. Gen., David A. Faber, U.S. Atty., Charleston, W.Va., for defendants.

## MEMORANDUM ORDER

### I.

COPENHAVER, District Judge.

In its memorandum order on the motion of the state defendants for summary judgment entered in the above-styled civil actions on October 15, 1982, the court reserved ruling on the question of whether collateral estoppel would have a preclusive effect on disputed issues of fact in further proceedings in this court, pending the filing of memoranda. The question is now ripe for decision.

### II.

The facts of these cases are set forth in the order of October 15 and are incorporated by reference. All three of the plaintiffs in these actions filed complaints with the Department of Labor (DOL) claiming that their terminations from employment with the Governor's Office of Economic and Community Development (GOECD) were procedurally defective and politically discriminatory. These complaints were processed through several administrative levels of the Department of Labor, as provided for in the applicable regulations. *See* 20 C.F.R. §§ 678.81 to 676.89. A Department of Labor grant officer made a final determination of the matters raised in plaintiffs' complaints in February, 1981. This determination was affirmed by an administrative law judge, as set forth in her Decision and Order of July 9, 1982, after a hearing held in February, 1982. The administrative law judge concluded that the evidence did not support plaintiffs' allegations that they were terminated for political reasons, in violation of CETA or CETA regulations, or that reorganization of GOECD was a pretext for political discrimination. She further concluded that plaintiffs' rights to the procedural protections provided by CETA and CETA regulations were not violated, finding that plaintiffs were given an opportunity for an informal hearing and failed to properly use the grievance procedure afforded them.[1]

In the consolidated actions now before this court, plaintiffs have alleged that their terminations from employment were politically motivated, in violation of rights secured to them by the First and Fourteenth Amendments, and that they were denied their rights to due process of law in connection with their terminations, primarily because of defendants' failure to afford them a formal hearing. In its order of October 15, 1982, this court ruled that, for purposes of § 1983, plaintiffs had constitutional claims as distinct from their CETA claims ultimately heard by the administrative law judge, but suggested that the administrative law judge's findings of fact on the issues before her might preclude trial on those same issues here.[2]

---

1. *In the Matter of Albert S. Moellendick, Estate of Robert Berry, Roland McCulty, Claimants vs. West Virginia Governor's Office of Economic and Community Development,* No. 81- CETA–156, U.S. Department of Labor, Decision and Order of July 9, 1982.

2. In their amended complaints, plaintiffs also stated a claim for relief against these defend-

## III.

■ The purpose of the doctrine of collateral estoppel is to promote finality in litigation and conserve the resources of both the parties and the courts. *See Allen v. McCurry,* 449 U.S. 90, 94–95, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980); *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979). *McCurry* definitively held that the concept of collateral estoppel could be applied to § 1983 actions involving constitutional claims. Although that case concerned the preclusive effect to be given to issues litigated in state courts, there is nothing in the Court's opinion which suggests that a distinction should be made for administrative proceedings when the requirements for application of collateral estoppel are met. In *United States v. Utah Construction and Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), the Court held that where certain conditions obtain, factual determinations made in administrative proceedings would have a preclusive effect on later judicial proceedings even though the causes of action and the relief sought in the two proceedings were not the same. *See also Nasem v. Brown,* 595 F.2d 801 (D.C.Cir. 1979); *Pettus v. American Airlines, Inc.,* 587 F.2d 627 (4th Cir.1978). Courts which have considered the application of collateral estoppel from administrative proceedings to § 1983 actions subsequent to the decision in *McCurry* have not hesitated to apply it. *See, e.g., Gear v. City of Des Moines,* 514 F.Supp. 1218 (S.D.Iowa 1981); *O'Connor v. Mazzullo,* 536 F.Supp. 641 (S.D.N.Y.1982). *Cf. Moore v. Bonner,* 526 F.Supp. 143 (D.S.C.1981), *rev'd* 695 F.2d 799 (4th Cir.1982).[3]

Plaintiffs' argument that collateral estoppel should not apply to their § 1983 claims mistakes the applicable law and the scope of the doctrine. The court has not suggested that plaintiffs' constitutional claims were litigated in the CETA proceedings and therefore should be estopped here.[4] However, any claim, whether constitutional, statutory, or common law, must have facts to support it. When those facts have already been decided in a proceeding involving the requisite indicia for invoking the doctrine of collateral estoppel, they should not need to be decided again.

ants under 42 U.S.C. § 1985. This claim was subsequently withdrawn by plaintiffs and dismissed from these actions.

3. In *Moore v. Bonner,* the Fourth Circuit Court of Appeals holds that collateral estoppel is not applicable to a § 1983 action where the initial proceeding was before a local school board and was not appealed to a state court. The grounds for this holding appear to be that under *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (res judicata and collateral estoppel applicable to § 1983 actions), and *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (Title VII not an exception to 28 U.S.C. § 1738), there must be a state court judgment, as distinguished from the unappealed decision of a state administrative agency, for a federal court to give preclusive effect to a state adjudication. The instant cases are distinguishable from *Bonner* for several reasons. First, the administrative determination is that of a federal, not a state, agency. Therefore, *Kremer,* which is based on the full faith and credit clause of 28 U.S.C. § 1738, is not applicable. Second, and more importantly, the *Bonner* court takes as a premise of its analysis the principle that civil rights plaintiffs should have access to either a state *or* federal court to resolve their grievances. Plaintiffs here have already been afforded the opportunity to bring their grievances before a federal forum through their appeal to the Fourth Circuit of the administrative law judge's decision which now stands affirmed. *Moellendick, et al. v. West Virginia Governor's Office of Economic and Community Development,* —— F.2d ——, No. 82–1784 (4th Cir., Sept. 15, 1983). Moreover, the *Bonner* court does not examine the nature of the administrative tribunal or its proceedings, although in an earlier decision the Fourth Circuit suggested that such scrutiny, "to ensure that the traditional guarantees justifying the application of the principle are present," was "integral" to a finding that the determination of an administrative agency was entitled to collateral estoppel effect in a federal action. *Anderson v. Babb,* 632 F.2d 300, 306, n. 3 (4th Cir.1980). Additionally, *Bonner* does not distinguish between the legal and factual determinations of a state agency. *Anderson* suggests that in some instances an administrative tribunal may not have the same expertise to decide issues of law as a common-law tribunal. *Id.* In the cases at bar, however, the question is solely one of the preclusive effect to be given to the agency's factual determinations.

4. *See* Memorandum Order of October 15, 1982, at 6–7.

What, then, are the requisite indicia for invoking the doctrine of collateral estoppel? First, the fact or legal question at issue must "have been actually and necessarily determined by a court of competent jurisdiction." *Montana v. United States,* 440 U.S. at 153, 99 S.Ct. at 973. If the "court" is an administrative agency, it must have been acting in a judicial capacity and the issues in dispute must have been properly before it. *United States v. Utah Construction Co.,* 384 U.S. at 422, 86 S.Ct. at 1560; *Nasem v. Brown,* 595 F.2d at 806. A second criterion is whether the parties had a "full and fair opportunity" to litigate the issue for which preclusion is sought. *United States v. Utah Construction Co.,* 384 U.S. at 422, 86 S.Ct. at 1560; *Allen v. McCurry,* 449 U.S. at 95, 101 S.Ct. at 415. In administrative proceedings, a related criterion is whether the parties and the agency had an expectation that the agency's determinations of fact would be final, thus creating an incentive to full and fair litigation. *See, e.g., Grose v. Cohen,* 406 F.2d 823 (4th Cir. 1969); *Gear v. City of Des Moines,* 514 F.Supp. at 1221–22 (and the cases cited therein); *Moore v. Bonner,* 526 F.Supp. at 148–49. Additionally, the agency action must be subject to judicial review, *United States v. Utah Construction,* 384 U.S. at 422, 86 S.Ct. at 1560, although review need not actually be had. *See, e.g., Moore v. Bonner,* 526 F.Supp. at 148. Generally, it is not necessary that all the parties to the initial and the second proceedings be the same, as long as the party to be estopped had a "full and fair opportunity" to litigate in the first proceeding the issue for which preclusion is sought. *Allen v. McCurry,* 449 U.S. at 95,[5] 101 S.Ct. at 415.

In the instant case, there can be no dispute that the agency (Department of La-

bor) was acting in an adjudicative capacity when it heard and acted on plaintiffs' claims. The administrative law judge has no administrative or investigative functions within the Department of Labor and therefore can function as a neutral fact finder. The proceedings before the administrative law judge are guided by the Federal Rules of Civil Procedure to the extent that they are not regulated by CETA rules. 20 C.F.R. § 676.89(a). Discovery is allowed and in these cases was taken. § 676.89(e).[6] The administrative law judge hears evidence and then renders a decision based on the hearing record. 20 C.F.R. § 676.90. That this was done here is reflected in the administrative law judge's Decision and Order of July 9, 1982. Additionally, that order indicates that the parties were noticed before the hearing, were represented by counsel, and could call witnesses by subpoena. *See* 20 C.F.R. § 676.90(a). Each party had the opportunity to make opening statements, examine witnesses under oath[7] and present exhibits and other documentary material for consideration. At the conclusion of the hearing, each party was allowed to make a closing statement and to file briefs within a thirty-day period, which counsel did. While technical rules of evidence are not applicable to these hearings, the administrative law judge is to assure production of the most credible evidence and to subject testimony to cross examination where deemed reasonably necessary. 20 C.F.R. § 676.90(c). The hearing transcript in these cases reveals that witnesses were cross examined.

The presence of all these indicia of judicial or adversarial proceedings and procedural safeguards demonstrates not only that the agency was acting in a judicial capacity but also that plaintiffs, who are

---

**5.** The Governor's Office of Economic and Community Development was the defendant in the administrative proceedings. All of the state defendants here with the exception of Governor Rockefeller were members of that agency. Therefore, while not required, there is a substantial identity of parties.

**6.** *See* documents furnished to the court in support of State Defendants' Supplemental Memo-

randum of Law on Whether Collateral Estoppel Is Applicable In These Cases. Discovery included depositions, interrogatories and a request for production of documents.

**7.** *Cf. Nasem v. Brown,* 595 F.2d 801 (D.C.Cir. 1979) (failure to grant live witness testimony precludes application of collateral estoppel).

the parties to be estopped, had a full and fair opportunity to litigate their claims in these proceedings. The plaintiffs have made no suggestion to the court that this was not the case. Plaintiffs must also have had an expectation of finality as to these proceedings, which they initiated, since the CETA regulations provide that the decision of the administrative law judge is to be the final decision of the Secretary of Labor unless he modifies or vacates it within thirty days. 20 C.F.R. §§ 676.91(f), 676.92(a). In these cases, the administrative law judge's decision did become final agency action and, as such, was subject to judicial review by the Fourth Circuit. 29 U.S.C. § 817(a); 20 C.F.R. § 676.92(b). *See also* 5 U.S.C. § 704. The agency's findings of fact, if supported by substantial evidence, are conclusive on the appeals court, although it may order them set aside for good cause shown. 29 U.S.C. § 817(b). Any lack of diligence on plaintiffs' part in presenting evidence and arguing their case before the administrative law judge could not be construed as good cause. Therefore, the court must assume that the finality of the administrative law judge's decision gave plaintiffs sufficient incentive to present their case fully in the administrative proceedings. *See United States v. Utah Construction Co.,* 384 U.S. at 399–400, 86 S.Ct. at 1548; *Gear v. City of Des Moines,* 514 F.Supp. at 1222.

The availability here of judicial review of agency action satisfies another criterion for application of the doctrine of collateral estoppel. Although, as discussed above, *Utah Construction* does not suggest that review must actually be had before a court can apply collateral estoppel, *see Gear v. City of Des Moines,* 514 F.Supp. at 1220–22, here the agency action has been reviewed and affirmed. *Moellendick, et al. v. West Virginia Governor's Office of Economic and Community Development,* 717 F.2d 922 (4th Cir.1983).

It also appears to the court that there can be no dispute that the issues decided by the administrative law judge were properly before her. They were premised on the com-

plaints filed by the plaintiffs initiating administrative proceedings with the Department of Labor and alleging violations of CETA and CETA regulations. Subpart F of 20 C.F.R. § 676 *et seq.,* §§ 676.81–676.93, is designed specifically to provide administrative resolution of such allegations, including relief ˙for violations found. 20 C.F.R. §§ 676.81(a)(b), 676.83–676.86, 676.-88, 676.91(c). Additionally, for purposes of applying collateral estoppel, the factual questions of whether plaintiffs' terminations were politically motivated and what procedures they were afforded were actually and necessarily determined by the administrative law judge as they were the factual predicate for precisely the issues put before her and on which she affirmed the final determination of the grant officer.[8] The conditions for application of collateral estoppel having been met, the further inquiry is to what extent the determination of these questions in the administrative proceedings has a preclusive effect on the constitutional issues asserted in this litigation.

Plaintiffs' constitutional claim that their terminations were politically motivated, as set forth in their complaint, rests on the same factual allegations presented to the administrative law judge and decided adversely to the plaintiffs. These allegations refer to plaintiffs' satisfactory performance record, their Republican party membership and their replacement by persons loyal to the administration of Governor Rockefeller, a Democrat, under the guise of a reorganization plan. The administrative law judge found that plaintiffs had not met their requisite standard of proof on their political discrimination claims under CETA; that is, "that they were excluded from participating in a CETA-funded program because of their political affiliation and that the selection or rejection of participants was a reward for political service." Decision and Order of July 9, 1982, at 9. While this court might use a slightly different standard, *see Mount Healthy City, S.D. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Daulton v. Affeldt,*

---

8. *See* Decision and Order of July 9, 1982, at 2, 3 and 16.

678 F.2d 487 (4th Cir.1982), the net factual result is the same. The administrative law judge found that plaintiffs failed to apply for new positions which were made available to them, that there was no substantive proof as to the political affiliation of plaintiffs' "so-called 'replacements,'" Decision and Order of July 9, 1982, at 9, that there was no proof that political affiliation was used as an employment criterion, and further that there was no immediate replacement of personnel at the time GOECD was reorganized, *id.* at 10. Additionally, the administrative law judge determined that the more credible evidence presented indicated that the reorganization was not " 'political' in character," *id.,* or a sham to allow politically motivated appointments. Given these findings on the factual issues litigated before the administrative law judge on plaintiffs' CETA claims, the court concludes that plaintiffs are collaterally estopped from relitigating the same factual issues giving rise to their First Amendment claims in this forum. Therefore, defendants are entitled to summary judgment on those causes of action.

### IV.

■ Plaintiffs' due process claim is somewhat more difficult of resolution. In their complaints in these actions, plaintiffs allege that they were denied an opportunity at the state level for a meaningful hearing in connection with their discharges and were also denied the right to have counsel present and other procedural safeguards concomitant with a formal hearing at the same level. Additionally, they allege there was no hearing provision in state law applicable to discharges or dismissals.

All the plaintiffs received a letter dated August 19, 1977, from defendant J. Howard Henderson, notifying them that their positions as regional administrators for GOECD were being eliminated effective September 6, 1977. With respect to plaintiff McCulty, the administrative law judge found that he filed a written grievance, dated August 29, 1977, with Henderson on September 6, 1977, protesting his termination from employment and the conditions thereof. On September 24, 1977, McCulty made a request for an informal hearing, a request which Henderson initially denied on the grounds that the reorganization of GOECD was an administrative decision and not subject to a hearing as an adverse action.[9] McCulty protested this denial and was told that he could appeal to Don Moyer, Director of GOECD. McCulty did not take this step, which would have been the next one in GOECD's grievance procedure, but instead, on January 5, 1978, wrote a letter of protest to Terrell Whitsett, Regional Administrator in the Department of Labor's Philadelphia office. Whitsett instructed Henderson to grant McCulty a hearing. Henderson thereupon informed McCulty on March 22, 1978, that he could have a hearing if he made a written request within five days. McCulty wrote a letter to this effect on March 28. Henderson replied the next day, granting the request and informing McCulty that he could appoint a representative to the hearing committee, which McCulty did. The hearing was scheduled for May 19, 1978, but was continued at McCulty's re-

9. *Compare* 29 C.F.R. § 98.26 (1977) (procedures required when adverse action taken against participant) *with* Governor's Office of Economic and Community Development, Employment and Training Division, Staff Grievance Procedure, September 6, 1977, Exhibit A to Affidavit of James L. Bonham, which provides that:

Areas of policy such as the mission of the Agency, its budget, it [sic] organization, and the assignment of personnel are not proper grievance matters. In addition, Management retains and reserves the right to: (1) hire, promote, assign, transfer, and retain employees in positions within the Agency, (2) sus-

pend, demote, discharge, or take other disciplinary action against employees, (3) relieve employees from assigned duties due to a lack of work, or other legitimate reason, (4) maintain the efficiency of government operations as assigned and entrusted, (5) determine the method, means, and personnel by which goals of the Agency are to be achieved, and (6) take whatever actions may be necessary to carry out the mission of the Agency in situations of emergency. NOTE: This is not to preclude an employee from filing a grievance in these areas if he/she believes an Agency action has been unjust, unfair, or improper.

quest. McCulty was asked to pick another date between June 5 and June 16. Counsel for McCulty then wrote to the chairman of the hearing committee, James Bonham, informing him of his representation of McCulty and selecting July 6 as a hearing date. Bonham informed McCulty that the grievance procedure did not provide for attorney representation at the hearing and gave him until August 15 to set a new hearing date. When McCulty failed to respond, Bonham told McCulty's counsel, by letter of August 17, 1978, that he considered the matter closed. Subsequently, in March of 1980, McCulty, as well as the other plaintiffs, filed a formal complaint with the Department of Labor. Decision and Order of July 9, 1982, at 5–6, 16.

As to plaintiff Moellendick, the administrative law judge found that he filed a grievance with GOECD on or about September 13, 1977. Moellendick got the same response to his request for a hearing as McCulty did. The response was embodied in a letter purportedly written by Henderson to Moellendick on September 27, 1977, but, according to Moellendick, not received by him until March of 1978. According to the administrative law judge's findings, Moellendick did not consider this lapse of time "unusual." On March 24, 1978, Moellendick wrote to Whitsett requesting assistance. Whitsett responded by letter of April 19, 1978, in which he advised Moellendick to first exhaust GOECD remedies. The administrative law judge found nothing in the record to show that Moellendick in fact did so. Decision and Order of July 9, 1982, at 7–8.

The administrative law judge found that plaintiff Berry never filed a formal grievance although he apparently made some inquiries about the grievance procedure to be followed.[10] The administrative law judge also found that Berry must have been on notice concerning the grievance procedure since he was in communication with McCulty and Moellendick. On April 12, 1978, Berry wrote to Whitsett complaining about his termination and his lack of response from GOECD and the DOL. Whitsett told Berry to contact Henderson. On May 17, 1978, counsel for Berry requested a hearing on his behalf. This request was denied by Henderson on the ground that it was untimely. Berry's counsel appealed this denial to the DOL. Whitsett then instructed Henderson to afford Berry a hearing. On October 4, 1978, Henderson again turned down this request on the basis that Berry had never filed a complaint with GOECD. Apparently no further action was taken by Berry or GOECD. Decision and Order of July 9, 1982, at 6–7, 14.

On the basis of these findings of fact, the administrative law judge determined that GOECD did have a grievance procedure in place at the time plaintiffs were terminated, which was made available to them, and that they were afforded the right to an informal hearing, although not immediately, which right they failed to use in a timely fashion[11] or follow through to completion. She thus concluded that "complainants' rights to procedural protections as provided by CETA and the regulations were not violated." Decision and Order of July 9, 1982, at 15. The administrative law judge also found that the applicable CETA regulations did not give complainants the right to representation by counsel and therefore there was no wrongful denial of such a right. *Id.* at 13.[12]

---

10. All three of these plaintiffs filed a complaint dated August 27, 1977, with the United States Civil Service Commission. This complaint was forwarded to the Department of Labor. The administrative law judge determined that this complaint did not constitute a formal filing with the DOL under the applicable regulations. Decision and Order of July 9, 1982, at 13–16.

11. Before the administrative law judge, plaintiffs also argued that the hearing they eventually were offered after their terminations was not timely proffered. However, at the time of their terminations, there was no requirement that a hearing be held within a specific period of time. *See* 29 C.F.R. § 98.26 (1977). *Cf.* 29 U.S.C. § 816(a) (1978).

12. A third procedural issue which was raised by plaintiffs in their brief filed in the administrative proceedings but not developed at the hearing concerned denial of procedural safeguards afforded by West Virginia law. Decision and Order of July 9, 1982, at 12. This

The administrative law judge's legal conclusions were framed in statutory terms, but their factual basis is the same as that underlying plaintiffs' due process claims. The plaintiffs are thus collaterally estopped from relitigating these questions of fact. To determine plaintiffs' claims as presented here, the court must ask what process was required under the Constitution. This is a question of law, determinable on a motion for summary judgment. *See McGhee v. Draper,* 639 F.2d 639, 643 (10th Cir.1981). In essence, this court must decide whether, given the process plaintiffs were afforded both prior to and at the hearing before the administrative law judge, more should have been provided at an earlier stage in the administrative processing of their complaints. It is clear that plaintiffs received constitutionally adequate procedural protection in the hearing before the administrative law judge.

■ In its memorandum order of October 15, 1982, this court held that plaintiffs had both liberty and property interests which were entitled to due process protection.[13] These interests are intertwined and arose in the context of a dismissal from employment. There is no single answer to what the Constitution requires in the way of due process when such interests are implicated. *See Mathews v. Eldridge,* 424 U.S. 319, 96

S.Ct. 893, 47 L.Ed.2d 18 (1976); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Cafeteria Workers v. McElroy,* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). *Goldberg* suggests a three-part inquiry consisting of the nature of the governmental interests involved, the nature of the private interests at stake and, as the "crucial factor," the risk of error attendant on the procedures provided.

In this case, the state defendants' asserted interest was in maintaining employee and management efficiency through realignment of staff positions in GOECD.[14] The plaintiffs' interest was in not being dismissed from employment for reasons that impinged on their statutory and constitutional rights to be free from political discrimination. The nature of the governmental interest involved suggests that those responsible for personnel decisions in GOECD should have a measure of discretion in making them. This discretion would be undercut if every employee who was unhappy with a management decision could immediately demand a full-dress hearing, a proceeding which is likely to be costly and time consuming. Moreover, the thrust of the CETA regulations is to seek informal conciliation of issues arising between CETA sponsors and participants. *See, e.g.,* 29 C.F.R. § 98.26 (1977, 1981).[15] Conciliation

issue is alluded to in the complaints in these proceedings in that plaintiffs allege that they were not entitled to civil service protection and that neither the grievance procedure nor any other applicable state law provided for a full hearing on the merits of the reasons for discharge and dismissal or for relief in the form of reinstatement. Since the court finds that plaintiffs were accorded a full hearing by the DOL as part of their administrative remedies and would have been entitled to reinstatement had they sustained their burden of proof at that hearing, further inquiry into these allegations in the context of plaintiffs' constitutional claim is unnecessary.

13. The court finds without foundation plaintiffs' allegations that their reputation interests were implicated in the decision to terminate their positions. No stigma attaches to being a member of the Republican party nor, if plaintiffs had been dismissed for that reason, could such a dismissal be a bar to future employment. *See Board of Regents v. Roth,* 408 U.S.

564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). The court also finds that, given the findings of the administrative law judge as to the reasons for plaintiffs' termination, they could not sustain a substantive due process claim that the defendants acted in an arbitrary and capricious manner.

14. *See* Exhibit A attached to defendants' Memorandum in Support of Motion for Summary Judgment. This exhibit consists of letters addressed to McCulty, Moellendick and Berry under date of August 19, 1977, informing them of the decision to eliminate the Regional Administrator positions within GOECD. The letters are signed by J. Howard Henderson, Director, Training and Employment Division.

15. The court recognizes that current CETA regulations do require an opportunity for a more formal hearing to be given at the recipient level when an informal resolution has not been accomplished. 20 C.F.R. § 676.83 (1982). How-

generally preserves the internal working relationships of an organization more harmoniously and effectively than adversarial confrontation. Additionally, it must be emphasized that while plaintiffs' positions were eliminated, they themselves were not relegated to the street so to speak, but rather given the opportunity to apply for other positions within GOECD. *See Arnett v. Kennedy,* 416 U.S. at 168, 94 S.Ct. at 1651 (Powell, J., concurring in part and concurring in the result in part); *Johnson v. United States,* 628 F.2d 187, 194–95 (D.C.Cir. 1980).

While the government here does have a substantial interest which weighs against having a formal hearing immediately upon notice of an adverse employment decision, the employees' interests are also substantial. Thus the inquiry must be whether the procedures provided were adequate to protect these interests. Plaintiffs were given notice of the decision to eliminate their positions and the reasons therefor prior to its effective date. Plaintiffs McCulty and Moellendick both filed grievances with GOECD. Decision and Order of July 9, 1982, at 14. Their immediate request for a hearing was not honored, but within six months both were given an opportunity for one, which neither utilized. Plaintiff Berry never filed a grievance and did not request a hearing until May, 1978, which request was denied on the grounds of untimeliness. Had plaintiffs had an informal hearing, they would have been able to explore the reasons for the decision to eliminate their positions. They would have been able to appear, testify, and/or be represented by an individual of their choice from within GOECD at the hearing. They would also have had the right to call, examine and cross-examine witnesses, to introduce documentary evidence and require the production of such evidence from the agency.[16]

*See, e.g., Endicott v. Huddleston,* 644 F.2d 1208, 1216 (7th Cir.1980).

While the timing of the hearing offer to McCulty and Moellendick might have been more prompt, the court cannot say that plaintiffs were denied any opportunity for a meaningful hearing at a reasonable time. *See Arnett v. Kennedy,* 416 U.S. at 158, 94 S.Ct. at 1646; *Detweiler v. Commonwealth of Virginia Dept. of Rehabilitative Services,* 705 F.2d 557 (4th Cir.1983). As to Berry, his failure to file a grievance or make a timely request for a hearing could be considered a waiver. *See, e.g., Christhilf v. Annapolis Emergency Hospital Ass'n,* 496 F.2d 174, 180 (4th Cir.1974). Ultimately, however, all these plaintiffs were afforded a full hearing on the merits as to the reasons for their discharges in an adversarial proceeding before an impartial hearing examiner, the administrative law judge, with counsel present. Such a hearing, as much as a proceeding in court, had the potential to correct any errors in prior proceedings. *See Goldberg v. Kelly,* 397 U.S. at 270–71, 90 S.Ct. at 1021–22; *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. at 1635. For due process considerations, it is immaterial that this hearing was at the federal rather than the state level. Indeed, CETA contemplates such a sequence. *See, e.g.,* 29 C.F.R. § 98.44(a)(5)(6) (exhaustion of local remedies required). Moreover, while plaintiffs were not working for GOECD in the interim after elimination of their positions, they would have been entitled to back pay and possibly reinstatement had the findings necessary to support such relief been made. *See, e.g.,* 29 U.S.C. § 816(f); *City of Pine Bluff, Ark. v. U.S. Department of Labor,* 658 F.2d 577 (8th Cir.1981); *City of Boston v. Secretary of Labor,* 631 F.2d 156 (1st Cir.1980) (reinstatement not necessary if the deficiencies in termination are only procedural as distinguished from substantive). Thus the court does not perceive that the

___

ever, the alternative procedures provided in 29 C.F.R. § 676.84 (1982) for employees do not require this type of hearing.

**16.** Governor's Office of Economic and Community Development, Employment and Training Division, Staff Grievance Procedure, September 6, 1977, Exhibit A, Affidavit of James L. Bonham. It should also be noted that McCulty, the only plaintiff who requested a scheduled hearing, was allowed to appoint a representative to the hearing committee.

risk of error attendant to the proceedings available, including any consequent hardship on the plaintiffs, is of such a magnitude as to have required more process at an earlier stage in the administrative processing of their complaints. *See Goldberg,* 397 U.S. at 264, 90 S.Ct. at 1018 (distinguishing position of discharged employee from that of eligible welfare recipient whose benefits have been terminated); *Arnett v. Kennedy* at 157, 170, 94 S.Ct. at 1645, 1652 (Powell, J., concurring in part and concurring in the result in part). Therefore, the court concludes under all the circumstances that the protection afforded plaintiffs' property and liberty interests was not constitutionally deficient and the state defendants are entitled to summary judgment as a matter of law on plaintiffs' due process claims.

## V.

Accordingly, for the reasons set forth above, it is ORDERED that the motion for summary judgment filed by defendants Rockefeller, Dean, Henderson, Maddy and Bonham in Civil Actions Nos. 79–2274, 79–2275 and 79–2276 on May 17, 1982, be, and it hereby is, granted.